OPINION OF THE COURT
David B. Saxe, J.
The principal issue in this case is whether a landlord may evict a commercial tenant in a holdover proceeding based upon the termination of the lease by the operation of a conditional limitation resulting from the tenant’s default in the payment of rent. In deciding this issue, it is necessary to determine whether the respondent’s implicit waiver of statutory protections afforded tenants (both residential and commercial) in nonpayment proceedings is permissible.
*20 As a starting point, I note that the procedural and substantive rights of a tenant depend upon the remedy chosen by the landlord (see, e.g., Park Summit Realty Corp. v Frank, 107 Misc 2d 318, affd 84 AD2d 700, affd 56 NY2d 1025). Thus, in a nonpayment proceeding commenced within New York City, both commercial and residential tenants have a right tó obtain an automatic and indefinite stay of the issuance and execution of a warrant of eviction by paying all rent due to the landlord or the court. (RPAPL 751, subd 1.)
The following are the essential facts here: This is a summary holdover proceeding to recover possession of a portion of the 30th floor in the office building known as 950 Third Avenue, New York, New York. On January 10, 1977, the parties entered into a written lease to use these premises as office space for a period of 10 years commencing April 1, 1977 and ending March 31, 1987.
As a basis for eviction, the petitioner relies on paragraph “15” of the lease, which states:
“conditions of limitation.
“This Lease and the term and estate hereby granted are subject to the limitation that: * * * (e) in case Tenant shall default in the payment of any fixed rent or additional rent or any other charge payable hereunder by Tenant to Landlord on any date upon which the same becomes due and such default shall continue for 5 days after Landlord shall have given to Tenant a written notice specifying such default * * * then in any of said cases Landlord may give to Tenant a notice of intention to end the term of this Lease at the expiration of 3 days from the date of the giving of such notice, and, in the event such notice is given, this Lease and the term and estate hereby granted (whether or not the term shall theretofore have commenced) shall expire and terminate upon the expiration of said 3 days with the same effect as if that day were the date hereinbefore set for the expiration of the term of the lease”.
The respondent failed to pay the additional rent for the months of January through September, 1982 as well as the fixed rent and additional rent for October and November, 1982 in the aggregate sum of $24,613.85. A holdover proceeding was then commenced.
*21 The tenant argues that lease paragraph No. 15 is a condition and not a conditional limitation. “In the case of a condition, the breach thereof does not ipso facto end the lease. The lease continues after breach exactly as before it occurred, until the landlord who has the right of forfeiture, elects to exercise it. Then the lease will come to an end. Thus, some act is required to be done to effect the termination of the lease.
“However, in the case of a conditional limitation upon the mere occurrence of the limitation; that is, the stipulated contingency, the lease automatically expires; and no reentry or any other act is necessary to end the lease. Thus, the happening of the event is, in itself, the limit beyond which the estate no longer exists, or can exist. No act is required to be done by anyone. The lease just expires.” (2 Rasch, NY Landlord & Tenant [2d ed], § 744, p 192; see, also, Beach v Nixon, 9 NY 35.)
I find that the provision created a conditional limitation by providing for termination of the lease upon the expiration of three days after the tenant’s receipt of the landlord’s notice of intention to terminate.
Although not raised by either side, the court, on its own, questions whether a landlord may, consistent with the public policy of this State, maintain a holdover summary proceeding based upon the operation of a conditional limitation resulting from the tenant’s default in the payment of rent. A tenant, promoting this view, might argue as follows: RPAPL 711 (subd 2), the statute under which a landlord may commence a nonpayment summary proceeding, was enacted to afford a landlord a quick and expeditious method for the recovery of unpaid rent without the necessity of becoming involved in the slow and cumbersome method of an action in ejectment. (2 Rasch, NY Landlord & Tenant [2d ed], § 994.)
When the statute was first enacted giving landlords the right to bring nonpayment proceedings, a landlord could only recover possession of property and not a money judgment. In 1920, however, the statute was amended to permit the landlord not only to recover possession but also a money judgment (id.).
*22 A tenant in a nonpayment proceeding has a right to effect an automatic and indefinite stay of the issuance and execution of a warrant by paying all the rent due to the landlord or the court. (RPAPL 751, subd 1.) Where a landlord, by operation of a conditional limitation in a lease makes the nonpayment of rent grounds for terminating the lease, he is, it could be argued, foreclosing the right of the tenant to stay the issuance of a warrant of eviction by paying the rent due — the procedure permissible if the vehicle of a nonpayment proceeding had been utilized. The tenant has no such right in a holdover proceeding because the operation of the conditional limitation terminates the tenancy. There is, simply put, after the conditional limitation operates to terminate the lease, nothing to redeem. Permitting the operation of the clause in question would operate at cross-purposes with the favored policy of permitting tender of the rent up to the time the warrant of eviction issues.
Nevertheless, it is true that parties of apparently equal bargaining power are free to contract with each other concerning the designation of terms and conditions of default. (Matter of Birnbaum v Yankee Whaler, 75 AD2d 708, affd 51 NY2d 935.) And, a landlord might contend that there is nothing intrinsically unconscionable regarding the designation of failing to pay rent when due in the context of a commercial lease as a conditional limitation (supra).
More to the point, however, is an analysis of the special statutory scheme to protect tenants in nonpayment proceedings within the context of whether a waiver of these rights is permissible. Under RPAPL 751, in a nonpayment proceeding, a tenant may effect a permanent stay by depositing the amount of the rent due into court. By treating the nonpayment of rent as a conditional limitation that terminates the lease, the tenant is seemingly waiving the possibilities of cure (through payment) that exist prior to the issuance of the warrant of eviction.
Although RPAPL 751 (subd 1, dealing with nonpayment proceedings), does not expressly prohibit waiver, a stay is mandated under that section if the tenant pays the amounts due. Consequently, it would be difficult to infer *23 that the Legislature intended to implicitly permit waiver. The more logical inference is that the Legislature considered an explicit prohibition of waiver unnecessary. The right to redeem after judgment in a nonpayment proceeding is stated in mandatory terms. The implication then is that the right to cure is nonwaivable and that the creation of lease termination possibilities on account of the nonpayment of rent, constitutes an impermissible waiver of the provisions in law providing a right of redemption to tenants in nonpayment proceedings. Support for this construction may be found in the history and purpose of summary proceedings. At common law, summary proceedings were not allowed. An action in ejectment, the available procedure, was slow and expensive. As previously indicated, in 1920, the New York Legislature provided for summary proceedings to afford the landlord a “simple, expeditious and inexpensive means of regaining possession of his premises in cases where the tenant refused upon demand to pay rent, or where he wrongfully held over without permission after the expiration of his term.” (Reich v Cochran, 201 NY 450, 454; see Gardens Nursery School v Columbia Univ., 94 Misc 2d 376, 377; Maxwell v Simons, 77 Misc 2d 184, 186; Lex-56th Corp. v Morgan, 24 Misc 2d 48, application den 13 AD2d 912; Haskell v Surita, 109 Misc 2d 409.)
Since summary proceedings are in derogation of tenants’ common-law rights, the Legislature enacted a comprehensive scheme to insure preservation of certain of those rights while achieving the purpose of providing an inexpensive and expeditious remedy for landlords. Moreover, because of the speed with which a landlord could retain possession of premises in which tenants had had a significant property interest, certain safeguards were required to comport with due process.
In discussing the statute from which RPAPL 751 (subd 1) was derived,[1] the Appellate Division held that summary proceedings for nonpayment of rent should be dismissed upon the tenant’s tender of the full amount of rent due, rather than stayed under a literal reading of the statute. *24 (Matter of Flewwellin v Lent, 91 App Div 430.) “[T]he summary proceeding is in derogation of the common-law rights of the tenant, and is to be strictly pursued in order to oust him, but no such rule is applicable to the tenant” (supra, p 432). (See Markese v Cooper, 70 Mise 2d 478, 480; Roosevelt Nassau Operating Corp. v Camy Holding Corp., 50 Misc 2d 906, 907.) Thus, it is evident that the tenant’s statutory right to cure should be liberally construed, for it is of paramount importance in the legislative scheme to protect tenants from eviction for nonpayment of rent.
Waiver of a statutory right conferred upon a private party but affecting the public interest is impermissible if in contravention of statutory policy. (Brooklyn Bank v O’Neil, 324 US 697, 704, affg 293 NY 666; Midstate Co. v Pennsylvania R.R. Co., 320 US 356; Estro Chem. Co. v Falk, 303 NY 83, 87.) Clearly, if the court were to entertain these holdover proceedings against the respondent, it would be permitting a waiver of the tenant’s right to cure.
Matters which New York courts have held nonwaivable “are those fundamental to the fabric of society * * * or [to] good governance”. (Nishman v De Marco, 76 AD2d 360, 371, app dsmd 53 NY2d 642; see, e.g., Caravaggio v Retirement Bd. of Teachers’ Retirement System of City of N. Y., 36 NY2d 348, 350, 353-354 [rights of a member of the New York City Teachers’ Retirement System to designate a beneficiary may not be bargained away by a separate agreement or other contract, since the statutes reflect public policy]; Weiman v Weiman, 295 NY 150, 154 [spouses may not contract to dissolve their marriage]; Guilo v Gullo, 46 AD2d 991 [same]; Cancemi v People, 18 NY 128, 138 [criminal defendant may not consent to withdrawal of a juror and trial by those remaining]; Driskell v Alfano, 12 AD2d 973 [parties to litigation may not waive all findings of essential facts on which judgment is founded].)
Thus, a tenant may not consent to payment of rent in excess of that permitted by law. In Estro (supra), a commercial tenant sued a landlord for rent paid in excess of the emergency rent permissible under the Commercial (Emergency) Rent Law. The landlord’s affirmative defense was based upon a written release by the tenant in “exchange *25 for valuable consideration”. The Court of Appeals held that express statutory provisions and public policy required that under no circumstances may tenants waive by agreement their right to recover rent paid in excess of that permitted by law. (Estro Chem. Co. v Falk, 303 NY 83, 87, supra.) Similarly, a residential tenant in a rent-controlled apartment may not stipulate to an increase in rent above the maximum permitted by law. (Norms Realty Corp. v Rodriguez, 108 Misc 2d 124; see, also, Blank v Buehr, 26 Misc 2d 224, 226 [tenant waiver of State residential rent laws held void where landlord attempted to convert combined residential and business property into decontrolled business space].)
The public policy in favor of protecting tenants in the rental market is sufficiently strong to bar waiver of provisions that do not expressly permit waiver. But even if the absence of an .express prohibition of waiver precluded such a conclusion, the respondent’s consent to the conditional limitation in the lease cannot be effective as a waiver for additional reasons.
Certain waivers have been held void as against public policy because they were prospective in nature and not in settlement of a contemporaneous dispute. Absent a bona fide dispute, an employee’s waiver of his statutory right to liquidated damages resulting from his employer’s failure to pay overtime wages is ineffective, despite the lack of express prohibition of waiver in the statute. (Brooklyn Bank v O’Neil, 324 US 697, 704, affg 293 NY2d 666, supra.)[2] Similarly, a Statute of Limitations cannot be extended by express agreement of the parties prior to the expiration of the period. (Midstate Co. v Pennsylvania R.R. Co., 320 US 356, supra.) In invalidating such an agreement made at the inception of the contract, the New York Court of Appeals stated: “If the agreement to ‘waive’ or extend the Statute of Limitations is made at the inception of liability it is unenforceable because a party cannot ‘in advance, make a valid promise that a statute founded in public policy shall be inoperative’ * * * Of course at that stage there is a greater likelihood that a ‘waiver’ or exten *26 sion of the defense, as part of the initial contract or obligation, was the result of ignorance, improvidence, an unequal bargaining position or was simply unintended.” (Kassner & Co. v City of New York, 46 NY2d 544, 551, citing Shapley v Abbott, 42 NY 443, 452.) Benefits of the exemption laws may not be waived by a debtor in the original contract. (Kneettle v Newcomb, 22 NY 249.) Nor may a commercial buyer as part of a conditional sales contract waive its statutory right to sale at public auction following the seller’s repossession of the equipment upon the buyer’s default. (Hurley v Allman Gas Engine & Mach. Co., 144 App Div 300.)
An automatic renewal clause in a lease has been held ineffective because it constituted a prospective “waiver” of the statutory requirement that a landlord notify a tenant before the lease is automatically renewed. (Wood Co. v Horgan, 291 NY 422.) The Court of Appeals expressly distinguished the situation where parties to a contract entered into a new contract after default, upon new consideration in a good-faith attempt to settle their differences[3] (supra, p 425). The reason given for the distinction was that in the latter situation there would be a reasonable probability of equal bargaining power.
Only one case dealing with the question of whether the provisions of RPAPL 751 would supersede the explicit agreement of the parties has come to the court’s attention. In Matter of H.A.E.F.F. Realty Corp. v J.P.G. Rest. Corp. (50 Misc 2d 266), the tenant applied for, but was denied, a section 751 stay under the constraints of a valid stipulation entered as part of a final order of the court in an earlier proceeding. Under the terms of the stipulation, the tenant had agreed that upon default in payment of current rent and arrears, the landlord would be entitled to issuance of a dispossess warrant pursuant to the court’s final order, if the tenant failed to pay full arrears on or before the return date of the warrant application.
The question presented in H.A.E.F.F. differs from the instant case in important respects. First, the stipulation *27 was included in the court’s final order for the landlord in a prior hearing, rather than contained in a lease at the inception of the landlord-tenant relationship. Second, the stipulation was given upon new consideration in that no warrant would issue so long as the tenant fulfilled its obligations thereunder.
This case involves a waiver of the benefits of RPAPL 751 in an original lease. It was therefore entered into before any cause of action arose and did not settle any contemporaneous dispute. The conditional limitation constitutes a prospective attempt to waive a statutory benefit designed to protect the renting public. As a prospective waiver it is void as against public policy.
Even if the protection of RPAPL 751 were waivable in advance, the “waiver” in the instant case could not be upheld. “Waiver means the intentional relinquishment of a known right.” (Matter of Meachem v New York Cent. R.R. Co., 8 NY2d 293, 299.) Waiver of a statutory benefit must be express, and “[n]one should be implied as against the policy of the statute, assuming such a waiver in advance permissible.” (Hurley v Allman Gas Engine & Mach. Co., supra, p 305.) Since there was no express waiver of the right to cure, none will be inferred from the conditional limitation upon which petitioner seeks to terminate the lease and proceed against respondent as a holdover.
Allowing petitioner to circumvent the legislative scheme set up for rent-defaulting tenants would frustrate the purpose of these provisions. If a tenant were permitted to waive in advance these statutory protections against eviction for default in payment of rent,' a judicial repeal of these provisions would be effected. The statute as a whole reflects a legislative balancing of the interests involved. The purpose of summary proceedings would be better served if petitioner were required to pursue his inexpensive and expeditious remedy under RPAPL 711 (subd 2) in a nonpayment proceeding. Under these circumstances, RPAPL 751 (subd 1) would seem to preclude the petitioner’s action against the respondent as a holdover.
On the other hand, it should be pointed out that the parties to this lease appear to be experienced businessmen who were represented by counsel during negotiations lead *28 ing up to this lease. There is no indication of bad faith, duress or unconscionability in the lease formation process. Additionally, the lease provision itself (paragraph 15) does not eradicate cure but confines it to a limited period of five days after written notice is furnished. The furnishing of this cure period might theoretically permit the tenant in the holdover action more time to cure than would exist in a nonpayment proceeding; starting from the date of judgment and extending to the time of the issuance of the warrant of eviction, but, as a practical matter, that is unlikely. The court is aware of the fact that it takes considerably longer than five days from the date the court grants a final judgment of possession to the time when the warrant is prepared, checked, signed and thereby issued. Moreover, the stay in a nonpayment proceeding (RPAPL 732) results after a hearing on the merits and, unlike the cure period in this case, a tenant is not required to take action before a court determines the bona fides of the landlord’s case.
In conclusion, I hold that the petitioner cannot maintain this summary holdover proceeding based upon the lease provision providing that nonpayment of rent is a conditional limitation, terminating the estate. The lease provision is void for reasons of public policy because, among other things, it improperly waives special tenant protections provided under RPAPL 751 (subd 1). This holding does not mean that owners cannot maintain holdovers based upon the repeated need to bring summary nonpayment proceedings against late-paying tenants. They of course can. (National Shoes v Annex Camera & Electronics, 114 Misc 2d 751.) To succeed with that course of action, owners must demonstrate a pattern of nonpayment by the tenant continuing over a substantial period of time and the institution of several nonpayment proceedings as a result (supra).
Here, the lease provision encourages the loss of the tenant’s estate based upon, for example, a tenant’s failure to timely pay a single month’s rent. The results that would flow from a decision in favor of the landlord here would be catastrophic. Leases, both residential and commercial, would be rewritten to provide for termination upon failure *29 to pay a single unit of rent although residential tenants might have 10 additional days after judgment to effect a cure (RPAPL 753). Landlords might soon eschew nonpayment proceedings totally in favor of holdover proceedings. I don’t believe the Legislature ever intended to have tenants face the spectre of immediate forfeiture based upon issues that involve the nonpayment of rent. That being said, the petition is dismissed.

. Section 2254 of the Code of Civil Procedure (1876), repealed and re-enacted as section 1435 of the Civil Practice Act (1920).

. Brooklyn Bank and Midstate Co. have been cited as absolutely prohibiting waiver. (See, e.g., Norms Realty Corp. v Rodriguez, 108 Misc 2d 124, 126.)

. The court in Estro Chem. Co. v Falk (303 NY 83, 87) similarly distinguished subsequent agreements in which parties attempt to settle their differences after liability or default had occurred.