opinion of the court
Lewis R. Friedman, J.
These two cases, consolidated for the purposes of trial, present an important question, not previously decided, of interpretation of one of the form leases commonly used in commercial leasing transactions.
The facts are relatively simple. The tenant first leased room 802. In 1981 he signed a lease for room 802, which he had previously rented, and also, in a separate document, leased room 804. The space, used as a jewelry business, is located in a large jewelry district building. All of the leases were on the Real Estate Board of New York, Inc., form loft lease.
Landlord commenced separate nonpayment proceedings for each room; both resulted in default judgments. The judgment for room 802 was ultimately set aside; the one for room 804 was executed and landlord regained possession of that space. Of course, tenant’s obligation to pay rent on room 804 continued since the space is still unrented, despite landlord’s good-faith efforts to mitigate.
*335 Landlord served a notice to cure and, then, a notice to terminate the room 802 lease. The notice given pursuant to paragraph “17” of the lease asserted the failure to pay the rent for room 804. The holdover proceeding followed.
The nonpayment petition was eventually amended, by order of Judge Wilk, to include the unpaid rent for rooms 802 and 804. The basis for that amendment is the unnumbered introductory printed paragraph of the lease which provides: “In the event that * * * Tenant shall be in default in the payment of rent to landlord pursuant to the terms of another lease with landlord or with landlord’s predecessor in interest, landlord may at landlord’s option and without notice to tenant add the amount of such arrearages to any monthly installment of rent payable hereunder and the same shall be payable as additional rent.”
Tenant argues that the termination of a lease on the basis of a default in the payment of rent is barred as a matter of the public policy. Judge Saxe in 950 Third Ave. Co. v Eastland Inds. (119 Misc 2d 19) and Judge Lehner in Grand Liberte Coop, v Bilhaud (Civ Ct of City of NY, NY County, 1983, index No. 84289/83), have each discussed that question, at length; the issue is hardly free from doubt. (See, e.g., Kazis v Tab-Tex, Inc., NYLJ, Nov. 1, 1979, p 6, col 5 [App Term, 1st Dept], revd 77 AD2d 521; Rockefeller Center v La Parfumerie Marco Corp., NYLJ, July 6, 1981, p 5, col 1 [App Term, 1st Dept]; Birnbaum v Yankee Whaler, 75 AD2d 708.) This court need not reach that question, however, because it appears the standard, printed default paragraph which the lease clause at issue does not permit the termination here.
In pertinent part paragraph “17” also appears in office and store form leases and provides for a notice to cure and then a lease termination: “If the tenant shall default in fulfilling any of the covenants of this lease, other than the covenants of the payment of rent or additional rent * * * or the tenant shall make default with respect to any other lease between landlord and tenant.”
Petitioner asserts that the limitation “other than the covenants of the payment of rent” applies only to the rent due on the main lease, here room 802, and a termination may occur for a nonpayment on a second lease, here room *336 804. While that interpretation may be a plain reading of the lease, it flies in the face of common sense, the obvious intent of the parties, and the commercial realities.
The two standard clauses at issue here permit a landlord to recover possession of all property leased to a single tenant in the event of a breach of any lease between the parties. This is a rational process in numerous situations, such as where separate spaces are leased to a tenant expanding its business. The landlord is not relegated to bringing a proceeding only on the single portion of the space for which there is a breach of the lease. The lease language makes it obvious that the parties did not intend the nonpayment of rent to trigger the lease termination provision. The landlord’s interpretation of paragraph “17” is, moreover, inconsistent with its insistence that the rent default under the room 804 lease caused a rent default under the room 802 lease. If the introductory cross rent default provision applies, then the default under paragraph “17” is for the nonpayment of rent, which does not permit a termination. It is illogical, given the obvious purpose of the default provisions, to permit termination of the main lease because of a rent default on a subsidiary lease. The tenant could cure the rent default long after the five-day cure period of paragraph “17” had run. (RPAPL 749, 751.) Then a landlord, for whose benefit the cross-default provision was written, would be in the anomalous position of retaining the tenant on the subsidiary lease but evicting it on the main lease.
The court has only been able to locate one case dealing with a similar lease provision. (Soltwisch v Blum, 9 Ill App 3d 760.) The problems presented in leases of vacant land in Illinois are obviously different from those in a burgeoning commercial center. The court here must apply a commercially reasonable standard of lease interpretation which does not create anomalies. The court will not follow Soltwisch or enforce the default provision at issue here. The holdover proceeding is dismissed.
The nonpayment proceeding stands on a slightly different footing. The cross rent default provision appears to apply; yet, again appearances are deceiving. The purposes of the provision, to permit the premises to be treated as one *337 for dispossess litigation, has already ignored when landlord severed the unity and regained possession of the premises. Landlord’s claim is, now, for damages rather than for rent, on the room 804 lease. Indeed, the landlord-tenant relationship was severed by the issuance of the warrant. (RPAPL 749.) There is no sound reason in policy or law to allow the room 802 premises to be held hostage for the collection of a simple debt. Landlord’s proper remedy is to sue respondent for damages as they accrue on the room 804 lease.
The tenant’s remaining claims are rejected on the merits.
Final judgment for landlord for nonpayment of $15,286.74 rent for room 802 only; attorney’s fees, as provided by the lease, are found to be $1,800 in addition.