**Richard STROUSE, Petitioner and Appellee,**

v.

**Sue OLSON, Appellant.**

**No. 15070.**

Supreme Court of South Dakota.

Considered on Briefs Sept. 16, 1986.

Decided Dec. 17, 1986.

Albert C. Jones and B.J. Jones of Dakota Plains Legal Services, Mission, for petitioner and appellee.

James W. Olson, Armour, for appellant.

HENDERSON, Justice.

## ACTION

This is an appeal from an order which terminated the grandparent visitation rights of respondent-appellant Sue Olson. Finding no error with the trial court's decision, we affirm.

## FACTS

Sue Olson (Olson) is the natural mother of petitioner-appellee Richard Strouse (Richard), and the natural grandmother of Richard's two daughters Tracy (born June 20, 1975) and Tera (born May 18, 1977). Olson resides in Moville, Iowa, and Richard presently resides with his daughters and second wife Myrna McMillan Strouse (Myrna) in Platte, South Dakota.

In 1978, Richard and his first wife were divorced in Iowa and he was awarded the care, custody, and control of Tracy and Tera. Richard and his children resided together in Moville, Iowa, but in early 1978, they began residing in Olson's home.

In April 1980, Richard and Myrna were married and Richard and the children moved out of the Olson home and into a separate Moville residence with Myrna. Olson thereafter visited the children on weekends, but disagreements arose between the Strouses and Olson regarding Olson's visits. Visitations were then reduced by the Strouses and ill feelings developed between Olson and the Strouses.

Olson petitioned an Iowa District Court in January 1981, for grandparent visitation rights pursuant to Iowa Code § 598.35 (1974). This action led to the execution of a Stipulation by Richard and Olson, which permitted the latter to visit the children every fourth weekend and on two other consecutive days per month. The Iowa District Court found the terms of the Stipulation to be in the best interests of the children and its terms were incorporated into the Iowa court's decree. Several days prior to the execution of the Stipulation, however, the Strouses and the children moved to Platte, South Dakota, where Richard obtained a job as a lineman with the Charles Mix County Rural Electric Association.

Olson visited the children in Platte four times in September and October of 1981.

On the last visit, an argument/shouting match broke out between Myrna and Olson, resulting in Richard calling the police. Olson thereafter petitioned the Iowa District Court to modify her visitation rights, but the Iowa court found Iowa to be an inconvenient forum and dismissed the petition.

In January 1982, Richard petitioned the circuit court for Charles Mix County, South Dakota, to terminate Olson's visitation rights. In his Petition, Richard alleged that Olson used her visitation rights to harangue, molest, and injure himself and his wife; alleged that Olson intentionally and maliciously interfered with his relationship with his children and attempted to alienate them; alleged that Olson's behavior and conduct had a detrimental effect on his children; and alleged that such behavior constituted material and substantial changes which required that visitations be terminated. Olson thereafter filed a Motion to Modify Visitation, which sought visitation of the children outside the Strouses' presence. After a hearing on the merits, the circuit court concluded it had jurisdiction of the matter via SDCL ch. 25-5A, the Uniform Child Custody Jurisdiction Act, and it dismissed Richard's Petition and granted Olson's motion. In granting said motion, however, the circuit court reduced Olson's visitation rights to four Saturday afternoons per year and enjoined all persons involved herein from making disparaging remarks about the others to the children. This decision is embodied in the circuit court's Decree Modifying Visitation Rights and Injunction, dated and filed May 24, 1982. No appeal was taken from this decree.

On February 25, 1985, Richard filed a Motion to Vacate which moved the circuit court pursuant to SDCL 15-6-60(b) to vacate its previous Decree Modifying Visitation Rights and Injunction. In said motion, Richard asserted that he objected to any visitation by Olson whatsoever; that Olson's visits were not in the children's best interests; and that Olson's visitation rights were claimed under Iowa law and the Iowa Supreme Court had ruled that the grandparent visitation statute did not provide a means for court intervention when a dispute existed between the grandparent and the custodial parent who is their child. *Olds v. Olds*, 356 N.W.2d 571, 574 (Iowa 1984).

A hearing was held in which the Strouses, Olson, and the two children testified, the latter in camera in the presence of the court only. Based on the testimony and evidence, the circuit court entered Findings of Fact and Conclusions of Law and an Order Setting Aside Previous Decree which vacated the Iowa decree and its prior decree, and thereby terminated Olson's grandparent visitation rights. In its findings and conclusions, the circuit court determined, inter alia, that Richard's motive for seeking to terminate his mother's visitations was out of concern for his children and not out of spite; that Myrna was actively concerned and involved with the children's rearing and education; that Olson was a markedly emotional person and her testimony lessened her credibility; that SDCL 15-6-60(b)(5) provides a procedure for setting aside a previous decree where it is no longer equitable for it to have prospective application because of a change in the decisional law or operative facts; that Olson's claim to grandparent visitation rested upon Iowa law, which the Iowa Supreme Court held did not provide a means for court intervention when a dispute exists between grandparents and their own children; that the parenting right is a fundamental liberty interest which is protected against unwarranted state intrusion; that judicial enforcement of further visitations would divide parental authority and undermine parental control and care; and that the children's best interests were not furthered by forcing the children into a midst of conflict of authority and ill feelings.

From this Order Setting Aside Previous Decree, Olson now appeals.

## DECISION

### I.

#### SDCL 15-6-60(b)(5).

■ As relevant herein, SDCL 15-6-60(b)(5) provides that on timely motion and

upon such terms as are just, the circuit court may relieve a party from a final judgment or order if it is no longer equitable that the judgment should have prospective application. A motion for relief via SDCL 15–6–60(b) is addressed to the sound discretion of the circuit court, and will not be disturbed on appeal absent an abuse of discretion. *Overvaag v. City of Dell Rapids,* 319 N.W.2d 171, 173 (S.D. 1982).

On appeal, Olson contends the circuit court erred in vacating its previous decree, because a change in decisional law is not a sufficient basis for relief. With this contention, we disagree.

Olson's grandparent visitation rights grew out of Iowa Code § 598.35 and the Iowa District Court decree granting same. The South Dakota circuit court first became involved in this matter when Richard petitioned it to terminate Olson's visitation rights. At that time, South Dakota's grandparent visitation statute, SDCL 25–4–53, was not in effect, and the circuit court modified and reduced Olson's right to visitation arising from the Iowa decree. Thereafter, in *Olds v. Olds,* 356 N.W.2d 571, the Iowa Supreme Court determined that Iowa Code § 598.35 did not permit grandparent visitation when the grandparent's child objected thereto. Based on this change in the decisional law and the children's best interests, Richard motioned the circuit court via the third provision of SDCL 15–6–60(b)(5), to vacate its previous decree and terminate Olson's visitation rights. This the circuit court did, and under the facts and circumstances of this case, we find no abuse of discretion.

The federal counterpart of SDCL 15–6–60(b)(5) is Federal Rule of Civil Procedure 60(b)(5), and several cases and authorities have concluded that a change in the applicable or decisional law *may* provide a sufficient basis for *prospective* relief from a judgment or order under the third provision of Rule 60(b)(5). *See, e.g., System Fed'n No. 91 v. Wright,* 364 U.S. 642, 647, 81 S.Ct. 368, 371, 5 L.Ed.2d 349, 353 (1961); *Fortin v. Comm'r of Mass. Dep't of Pub.*

*Welfare,* 692 F.2d 790, 799 (1st Cir.1982); *Nyberg v. City of Virginia,* 667 F.2d 754, 756 (8th Cir.1982), *appeal dismissed, cert. denied,* 462 U.S. 1125, 103 S.Ct. 3102, 77 L.Ed.2d 1358 (1983); *United States v. Georgia Power Co.,* 634 F.2d 929, 934 (5th Cir.1981), *vacated,* 456 U.S. 952, 102 S.Ct. 2026, 72 L.Ed.2d 477 (1982); *Jordan v. Sch. Dist. of City of Erie, Pa.,* 548 F.2d 117, 122 (3rd Cir.1977); *Theriault v. Smith,* 523 F.2d 601, 601 (1st Cir.1975); *Class .v. Norton,* 507 F.2d 1058, 1062 (2nd Cir.1974); *Yuclan Enterprises, Inc. v. Nakagawa,* 583 F.Supp. 1574, 1576–77 (D.Hawaii 1984); *Loney v. Scurr,* 474 F.Supp. 1186, 1191–92 (S.D.Iowa 1979); *Inmates of Boys' Training Sch. v. Southworth,* 76 F.R.D. 115, 124 (D.R.I.1977); 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2863, at 208–10 (1973); and 7 J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 60.26[4], at 60–260 (2d ed. 1985).

In order to be entitled to such relief under the third provision of Rule 60(b)(5), however, three elements must be present. First, there must be a change in the regulatory, statutory, or decisional law which is specially applicable to that case. Second, the judgment, order, or decree from which relief is sought must have prospective effect or continuing operation as opposed to being a judgment, order, or decree which offers a present remedy for a past wrong, *Cook v. Birmingham News,* 618 F.2d 1149, 1152 (5th Cir.1980), like a judgment for money damages. *Ryan v. United States Lines Co.,* 303 F.2d 430, 434 (2d Cir.1962). And third, the change in the law must make it inequitable for the judgment, order, or decree to have further prospective application.

 We find the above-cited federal authority particularly persuasive in interpreting the third provision of SDCL 15–6–60(b)(5), and under the facts and circumstances of this case, we conclude the circuit court did not abuse its discretion. First, the Iowa statute upon which Olson's visitation rights were founded, was subsequently determined by the Iowa Supreme Court not to permit grandparent visitation when

the grandparent's child objected thereto. Thus, a change in the applicable law occurred. Second, the decree which granted Olson four visitations per year—the decree from which Richard sought relief—was a judgment, SDCL 2–14–2(9), which regulated future actions and activities. Thus, it was a judgment-decree of a continuing nature with prospective effect. Third, the law upon which Olson's visitation rights were premised, was subsequently interpreted not to permit court-induced grandparent visitation when the grandparent's child objected thereto, because this would interfere with the parents' right to raise their child or children. *Olds,* 356 N.W.2d at 574. Richard objected to Olson's visitations, and this made it inequitable for the judgment-decree to have further prospective application. Richard timely filed his Motion to Vacate—within four months after the rendition of the *Olds* decision—and his motion did not constitute a substitute for appeal, which is not a permissible use for such a motion. *Flett v. W.A. Alexander & Co.,* 302 F.2d 321, 324 (7th Cir.1962), *cert. denied,* 371 U.S. 841, 83 S.Ct. 71, 9 L.Ed.2d 77 (1962). Additionally, the fact that Richard executed a Stipulation which was the basis for the Iowa decree is not fatal. A decree entered on the basis of the parties' consent or agreement does not negate the power to modify because of subsequent events and/or changes in the law. *System Federation,* 364 U.S. at 650–51, 81 S.Ct. at 373, 5 L.Ed.2d at 355; *Yuclan Enterprises,* 583 F.Supp. at 1577.

## II.

### CHILDREN'S BEST INTERESTS.

Richard's Motion to Vacate alleged, inter alia, that Olson's visits were not in the children's best interests. After a hearing on this motion, in which the Strouses, Olson, and the children testified, the circuit court determined, among other things, that the children's best interests were not furthered by forcing the children into a midst of conflict of authority and ill feelings. On appeal, Olson contends the circuit court erred in this determination, but we disagree.

Iowa Code § 598.35 provides in part: "A petition for grandchild visitation rights shall be granted only upon a finding that the visitation is in the best interests of the child." *See also* SDCL 25–4–53. The best interests of the children, however, do not include forcing them "into the midst of a conflict of authority and ill feelings between parent and grandparent...." *Olds,* 356 N.W.2d at 573. *See also Mimkon v. Ford,* 66 N.J. 426, 431, 332 A.2d 199, 201 (1975); *Commonwealth v. Smith,* 170 Pa. Super. 254, 256, 85 A.2d 686, 687–88 (1952); *Commonwealth v. Sharp,* 151 Pa.Super. 612, 616, 30 A.2d 810, 812 (1943); and *Carlson v. Carlson,* 16 Wash.App. 595, 596–98, 558 P.2d 836, 837–38 (1976).

Here, the settled record evidences severe ill feelings, bitterness, and animosity between Richard and Olson. These bad feelings are highlighted in the settled record, as demonstrated by a transcription of a telephone conversation between Richard and Olson, in which Olson threatens civil suits over personal property matters, threatens Richard's life, and criticizes and demeans Myrna. Additionally, the record reveals that the children were stressful before and after Olson's visits, and the children testified that they no longer desired to visit with Olson. Under these facts and circumstances, we conclude the circuit court did not err in determining that Olson's visits were not in the children's best interests.

The order appealed from is therefore affirmed.

MORGAN and SABERS, JJ., and FOSHEIM, Retired J., concur.

WUEST, C.J., concurs in result.

MILLER, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.