**Merlin TINGLE d/b/a M T Buildings, Plaintiff and Appellee,**

v.

**PARKSTON GRAIN COMPANY, a Corporation, and Diamond Building System, a Corporation, Defendants and Appellants.**

**No. 16220.**

Supreme Court of South Dakota.

Considered on Briefs Feb. 15, 1989.

Decided June 21, 1989.

Douglas R. Bleeker, Mitchell, for plaintiff and appellee.

Michael V. Braley, Parkston, for defendant Parkston Grain Co.

Robert W. Swank of Stiles, Anderson & Swank, Mitchell, for defendant and appellant Diamond Bldg. System.

MORGAN, Justice.

Diamond Building System (Diamond) appeals from a default judgment entered against it in this mechanic's lien foreclosure action brought by Merlin Tingle, d/b/a M T Buildings (Tingle). We affirm.

Diamond employed Tingle to erect a grain storage facility for Parkston Grain Company (Parkston Grain). Tingle completed the facility on October 6, 1986, and filed a mechanic's lien on January 13, 1987. Controversy had arisen between Tingle and Diamond over Tingle's bill for this job and other matters. The parties attempted to negotiate their differences until July 8, 1987. At that time, Tingle, by letter from his counsel, rejected a proposed settlement. Tingle filed suit against Parkston Grain and Diamond to foreclose its mechanic's lien. Diamond was served at its home office in Minnesota on September 9, 1987. Parkston Grain was served on September 4, 1987, and its answer was interposed on September 5, 1987. After Diamond failed to answer within thirty days, as required by SDCL 15-6-12(a), Tingle served Parkston Grain with Certificate of Readiness on November 24, 1987. On December 9, 1987, the trial court set January 5, 1988, as the trial date.

On December 23, 1987, immediately after South Dakota counsel was finally engaged, Diamond sought to serve and file an answer and counterclaim. The counterclaim sought to raise issues claiming damages against Tingle for failure to timely commence and complete the building, damage to business reputation, and a setoff for goods sold and delivered on a prior deal. Tingle responded by filing a motion to strike the pleadings as untimely and Diamond countered with a motion to enlarge the time for answering. The trial court granted Tingle's motion and denied Diamond's motion. At the time for trial, Diamond's counsel appeared and again sought relief by asking to participate on the answer alone. The trial court again denied relief, proceeded to take evidence as between Tingle and Parkston Grain, and en-

tered judgment against Parkston Grain for the foreclosure of the mechanic's lien.*

In an abundance of caution, the trial court apparently denied Tingle a default judgment at that time because Tingle had not given Diamond any notice of intention to seek default judgment. After Tingle gave Diamond notice, the trial court held a hearing by telephonic conference, resulting in the default judgment of which Diamond complains.

On appeal, Diamond raises two issues: 1. Whether the trial court committed reversible error in denying Diamond's motion for enlargement of time and by granting Tingle's motion to strike Diamond's answer and counterclaim, and 2. Whether the trial court properly entered default judgment against Diamond.

The crux of Diamond's first issue is whether the trial court abused its discretion in denying the motion to enlarge time for answering and otherwise pleading due to the failure to show excusable neglect. SDCL 15-6-6(b) provides, in pertinent part, that when

an act is required ... to be done at or within a specified time, the court for cause shown may at any time in its discretion

. . . .

(2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect[.]

The granting or refusing leave to file Diamond's answer, therefore, is a matter largely within the discretion of the trial court, and it is only upon a clear abuse of this discretion that this court will reverse such an order. *Antonen v. Swanson*, 74 S.D. 1, 48 N.W.2d 161 (1951); *Hallam v. Henkin*, 31 S.D. 637, 141 N.W. 784 (1913); *Parker v. O'Phelan*, 414 N.W.2d 534 (Minn.App.1987); *Routledge v. Routledge*, 377 N.W.2d 542 (N.D.1985).

The trial court explained its ruling as follows:

What we have got here is a rejection of an offer way back in July. Nothing is

---

* Parkston Grain is not a party to this appeal.

done. Diamond, the defendant here, is served September 9th. They sit on their rights through October 9th, November 9th, December 9th, that is three months, almost three and a half months, before the motions are filed. I think they were filed on the 24th of December.... And ordinarily I grant these motions fairly liberally, but it seems to me that if the statute means anything, and we are going to stand by the rules that the court has laid out for us, we just can't sit idly by and let three and a half months go by before you come in and make an answer.... [T]hree and a half months seems to me to be outside of the definition of excusable neglect considering the contents of the affidavit filed by the defendant in this case.

We have not had occasion to discuss the concept of "excusable neglect" as that term is used in SDCL 15–6–6(b). SDCL 15–6–55(c) provides for the setting aside of a default judgment for good cause shown in accordance with SDCL 15–6–60(b). In the latter statute, there is provision for relief from a final judgment upon the showing of excusable neglect. We have a number of cases where we discussed "excusable neglect" in that context.

■ First, we should note that a motion for relief under this statute is addressed to the sound discretion of the trial court. Absent an abuse of that discretion, the order denying such a motion cannot be disturbed on appeal. *Strouse v. Olson*, 397 N.W.2d 651 (S.D.1986); *Haggar v. Olfert*, 387 N.W. 2d 45 (S.D.1986); *Overvaag v. City of Dell Rapids, S.D.*, 319 N.W.2d 171 (S.D.1982).

■ Diamond relies on *Eby v. Misar*, 345 N.W.2d 381 (S.D.1984), for the proposition that "[t]he term excusable neglect has no fixed meaning and is to be interpreted liberally to insure that cases are heard and tried on the merits." *Id.* at 383. *Eby* is clearly distinguishable in that it involved the failure of an insurance carrier to provide the defense that was afforded to its insured. In *Eby*, we reiterated our previous holding in *Ackerman v. Burgard*, 79 S.D. 119, 109 N.W.2d 10 (1961): "When a judgment has been rendered against a de-

fendant who is in default because another person upon whom he has relied to attend to the defense for him has neglected to do so, the default judgment will be opened or set aside in the sound discretion of the court on the ground of excusable neglect." 345 N.W.2d at 383.

Such is far from the case here. From our examination of the affidavits submitted on the motions, we are unable to say that the trial court clearly abused its discretion. The affidavit for Diamond sets out a course of negotiation, mostly by telephone, with an apparent agreement in April. It acknowledges a July 8th letter from Tingle's counsel to Diamond's Minnesota counsel rejecting the settlement offer. Counsel then asserts that the failure to timely file "is excusable due to [Diamond's] genuine belief that a settlement had been reached at one point, and its further belief that this matter could be resolved without trial." The affidavits of both counsel indicated that in the event relief was granted and filing permitted, extensive discovery would probably be required before the case could again be set for trial.

In our opinion, the showing is woefully deficient. How Diamond could have continued until mid–December to have a belief that a settlement had been reached in spite of the letter of rejection and the commencement of a lawsuit is beyond comprehension. To state that there was a continued belief that the matter could be resolved without trial, when there is absolutely no showing of a single contact after commencement of the action that could be evidence of negotiation, is unsupportable. It is obvious that Diamond, for whatever reason other than excusable neglect, slept on their rights and the trial court properly denied their request for relief.

■ We next examine Diamond's second issue which appears to us to be rather frivolous. As we understand it, the crux of the argument is that the trial court failed to permit Diamond to dispute the claim of Tingle even though, as Diamond argues, the trial court was aware that Diamond had a dispute as to some of the items in Tingle's claim. In other words, Diamond

claims the right to fully litigate the issues that were not a matter of the record because of its failure to timely file its answer and counterclaim. For this argument, Diamond relies on the provisions of SDCL 15–6–55(b) which states, in pertinent part:

> If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or ·order such references as it deems necessary and proper[.]

Diamond cites us to no authority for its proposition. We are aware, of course, that the default judgment proceeding was the second part of a bifurcated trial. If counsel for Tingle had served Diamond with the proper notice before the January 5th trial date, the entire matter could have been taken care of then. The trial court having presided over the January 5th proceeding was fully cognizant of the claim of Tingle for services and materials. The trial court obviously did not deem it necessary to take any further testimony to support the claimed account. We cannot say that it was an abuse of discretion.

We affirm the judgment.

WUEST, C.J., and SABERS and MILLER, JJ., concur.

HENDERSON, J., concurs with writing.

HENDERSON, Justice (concurring).

Appellant Diamond is seeking to obtain relief from default under SDCL 15–6–60(b)(1) by filing its Motion for Enlargement of Time under SDCL 15–6–6(b)(2). This motion, when read in conjunction with the affidavit supporting it, clearly reflects that Diamond wants a continuance and also seeks discovery. This Motion for Enlargement of Time was filed after a trial date had been set. It sought, also, to raise many new issues just 13 days before the matter was scheduled for trial. Having not answered, and being 75 days in default, it is understandable why the trial judge

looked upon such type of civil practice with disdain. Trial Judges in this state must move litigation along and the Supreme Court monitors reports submitted by trial judges in this state to determine if there is inexcusable delay. Lawyers are reasonably required to timely answer and thereby protect their client's rights. Lay people do not understand long delays in the court system and here, before us, is an example of a trial judge doing his duty and attempting to prevent unnecessary delay. Indeed, the rights of civil defendants must be guarded, but the right of plaintiffs to have their cases heard, and not to be at the mercy of those who set idly by, must likewise be considered. Normal legal process must not be impeded by defendants who fail to proceed with reasonably prudent action.

The supporting affidavit is extremely weak in this case. First of all, it is signed by the attorney for Diamond. It contains many legal conclusions and a great amount of hearsay—not facts. Facts must demonstrate a meritorious defense, not conclusions of an attorney. It is best that he or she who knows the facts sign the affidavit as to the facts because of the verity which personal knowledge does imbue.

Time passes. Practices change. However, some procedures in the law appear immutable. Nearly 40 years have passed since two honorable and great men in the law, in their own right, the Honorable Turner Rudesill and Honorable George D. Lampert, both deceased, presided on the circuit bench. From them, in the 1950's, did I learn that to set aside a default judgment for a client, a showing had to be made of excusable neglect in the first instance and secondly, a probable meritorious defense had to be then established to the satisfaction of the trial judge. This cannot be done, obviously, without a good pleading and an affidavit evincing personal knowledge of the facts which establish a probable meritorious defense. The affidavit on file here reflects conclusions and bare assertions, based primarily upon hearsay. Furthermore, testimony of Mr. Schleif, Diamond's President, reflects that there is re-

ally no dispute on the $9,197.95 amount due and owing with the exception of "Outside of that $200 for the anchor bolts and whatever the material was". No affirmative defenses were pleaded in the answer.

Therefore, there is no clear abuse of discretion by the trial judge in ruling that the motion for Enlargement of Time not be granted, which as I have pointed out above, included an expansion of delay. This Court, in *Clarke v. Clarke* 423 N.W.2d 818 (S.D.1988) and *Peterson v. LaCroix* 420 N.W.2d 18 (S.D.1988) has very recently treated this general subject and has held, *inter alia,* that a two-prong requirement must be met to obtain relief. It is no different now that it was some 40 years ago when Circuit Judges Rudesill and Lampert insisted on compliance with this two-pronged rule. Lastly, I would add that a great amount of delay transpired in this case as a result of Diamond relying on their Minnesota counsel to handle this matter via the telephone. When either the telephone or correspondence did not work, South Dakota counsel was brought in, at the eleventh hour, when the default was entrenched. Too long the lamp was unlit, the loin ungirded.