UNITED FIRE & CASUALTY COMPANY, Plaintiff and Appellee,

v.

P & C INSURANCE SERVICES, INC., d/b/a Dakota Jordan & Associates, and Gerald Salmen, Defendants and Appellants,

and

Marilyn Jahner, Defendant.

Nos. 17651, 17661.

Supreme Court of South Dakota.

Considered on Briefs March 17, 1992.

Decided June 24, 1992.

**662**

Gary D. Jensen of Lynn, Jackson, Shultz & Lebrun, Rapid City, for plaintiff and appellee.

Kenneth E. Jasper of Jasper Law Office, Rapid City, for defendants and appellants.

MILLER, Chief Justice.

This is an appeal from a default judgment which was granted in this action to regain possession of insurance files and to

recover amounts due on a contract and promissory note. We affirm in part and reverse in part.

## FACTS

P & C Insurance Services, Inc. d/b/a Dakota Jordon and Associates (Insurance Services) was a corporation organized under the laws of South Dakota, with its principal place of business located in Rapid City, South Dakota. Insurance Services sold property and casualty insurance.

On January 5, 1988, United Fire and Casualty Company (United Fire) and Insurance Services executed an agency agreement which authorized Insurance Services to solicit business on behalf of United Fire. Sometime thereafter, Insurance Services defaulted on its obligations to United Fire by failing to remit premiums. On May 22, 1990, United Fire made a formal demand for the payment of monies owed on account pursuant to the contract and for money due on a promissory note signed by Gerald Salmen, a majority stockholder, both personally and as agent for Insurance Services.

On June 8, 1990, United Fire was informed by the South Dakota Secretary of State's Office that Insurance Services' charter had been canceled on December 15, 1989, for its failure to comply with South Dakota's reporting requirements.

United Fire initiated this suit against Insurance Services, Salmen, and Marilyn Jahner[1] to regain possession of all the books and records of Insurance Services; and for judgment (1) giving them permanent ownership of the "book of business"; (2) all amounts owed to United Fire plus interest; and (3) for a judgment for United Fire's costs, disbursements and attorney fees.

Along with the summons and complaint, United Fire served upon Insurance Services, Salmen, and Jahner,[2] and Jerome Kutil,[3] an order to show cause why United Fire should not be given possession of the insurance files. United Fire also filed an affidavit in claim and delivery. The trial court entered its order to show cause, requiring Insurance Services, Salmen, and Jahner to appear ten days later for the show cause hearing on June 18, 1990.

Salmen appeared personally at the show cause hearing. John Ruff, Insurance Services' manager, also appeared. During the hearing, it became apparent that there was some confusion as to the number and location of the insurance files. In fact, Salmen stated: "We are representing 196 clients and yet we can only find 49 files."

The trial court entered an order requiring Insurance Services to assemble and deliver to United Fire all of the books and records for the insurance policies solicited and written for United Fire.[4] The files were produced and United Fire copied all documents and made a detailed inventory which it filed with the trial court. Thereafter, the files were turned over to a local insurance agency for management.

On January 3, 1991, the trial judge sent a letter to United Fire's attorney and Jahner's attorney to ascertain the status of the case. United Fire responded by stating that it was still in the process of determining the amount owed to it. United Fire sent copies of this letter to Jahner's attorney and Salmen. The letter also stated that United Fire would proceed as soon as this amount was determined.[5]

On May 16, 1991, after the accounting had been completed and since no answer had been filed by either Insurance Services or Salmen, United Fire filed and served a motion for default judgment. United Fire

---

1. Jahner was a majority stockholder of Insurance Services.

2. Jahner filed a separate answer and motion to dismiss and is not a party to this appeal.

3. Jerome Kutil was a stockholder, director, and officer of a Minnesota corporation which owned stock in Insurance Services.

4. United Fire posted a replevin bond in connection with the order requiring the files to be turned over to it. The bond was for $60,000, which was twice the value of $30,000 then ascribed by United Fire to be the value of the files at issue.

5. Salmen claims he never received this letter.

supported this motion with an affidavit specifically setting out the amounts owed to it.

Insurance Services and Salmen (by this time having finally retained counsel) responded by submitting a motion to set aside default[6] based on the grounds that the default occurred through mistake, inadvertence, surprise, or excusable neglect. In support of this motion, Insurance Services and Salmen submitted affidavits from Salmen and Kutil which stated that they thought the lawsuit was terminated upon their delivering the files.

The trial court granted United Fire's motion for default judgment against Insurance Services and Salmen and entered an order on the issue of the taxation of costs. The order granted United Fire the sum of $29,258.34 (including interest) on the promissory note and the sum of $12,412.24 (including interest) on the overdue premium charges for a total of $41,670.58. Additionally, United Fire was awarded $527.11 for costs. This appeal was then taken by Insurance Services and Salmen who we will herein periodically refer to as appellants.

## DECISION

### I.

Whether a party who "appears" at an order to show cause hearing is in default if it thereafter fails to file an answer.

■ Appellants contend that they were not in default because Salmen was present at the show cause hearing. SDCL 15–6–12(a) provides: "A defendant shall serve his answer within thirty days after the service of the complaint upon him, except when otherwise provided by statute or rule."

It is apparent from the record that Insurance Services and Salmen were clearly in default as more than thirty days passed from the time they were served with the complaint until they answered. We find no merit to appellants' argument that their "appearance" at the show cause hearing satisfied the requirements of SDCL 15–6–

12(a). *Tingle v. Parkston Grain Co.*, 442 N.W.2d 252 (S.D.1989); *Williams Ins. v. Bear Butte Farms TNP*, 392 N.W.2d 831 (S.D.1986).

### II.

Whether appellants have established good cause for setting aside the default.

■ Appellants contend that they believed that if they delivered the files to United Fire after the show cause hearing the matter would be resolved. They argue that their inaction was therefore excusable neglect. SDCL 15–6–60(b)(1) provides that the court may relieve a party from a default upon a showing of "good cause":

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) Mistake, inadvertence, surprise, or excusable neglect[.]

■ "Excusable neglect" has no fixed meaning and the trial court must determine from the facts and circumstances of each case whether the neglect should be excused. *Gunvordahl v. Knight*, 73 S.D. 638, 47 N.W.2d 561 (1951). We have also stated that the term should be "interpreted liberally to insure that cases are heard and tried on the merits." *Phipps v. First Federal Sav. & Loan*, 438 N.W.2d 814, 819 (S.D.1989); *Eby v. Misar*, 345 N.W.2d 381 (S.D.1984). However, the relief afforded under this section is left to the sound discretion of the trial court. *Tingle*, 442 N.W.2d at 254; *Haggar v. Olfert*, 387 N.W.2d 45 (S.D.1986); *Rogers v. Rogers*, 351 N.W.2d 129 (S.D.1984); *Overvaag v. City of Dell Rapids, S.D.*, 319 N.W.2d 171 (S.D.1982). This court will not overturn the trial court's decision unless there has been abuse of that discretion. *Clarke v. Clarke*, 423 N.W.2d 818 (S.D.1988). This court has made it clear that:

> A defendant has a right to serve as his own counsel; however, having exercised

---

6. At this time, no default *judgment* had yet been entered. Presumably they were asking the court to excuse their default.

this right, it would be unjust to allow defendant liberties not accorded to those who seek out members of the Bar to represent them in cases such as this. *Sunpower, Inc. v. Hawley*, 296 N.W.2d 532, 533 (S.D.1980); *Farmers Cooperative El. Co. of Revillo v. Johnson*, 90 S.D. 36, 237 N.W.2d 671 (1976).

"Excusable neglect must be neglect of a nature that would cause a reasonable, prudent person to act similarly under similar circumstances." *Clarke*, 423 N.W.2d at 821. Appellants were served with a summons, wherein it stated that the failure to answer within thirty days could result in default judgment. It is important to point out that one of the defendants in the original action (Jahner) retained counsel and answered the complaint and, as a result, United Fire could not pursue a default judgment against her. Had appellants similarly retained counsel when served with the complaint, they would find themselves in a much different position. Similarly, nothing prevented them from filing a pro se answer.

Considering all of the foregoing, we cannot say the trial court abused its discretion in either not excusing the default or in granting the judgment.

### III.

Whether United Fire adequately substantiated its monetary claims against appellants.

■ SDCL 15–6–55(b)(1) provides:

Judgment by default may be entered as follows:

(1) By the Court ... If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence ... the court may conduct such hearings or order such references as it deems necessary and proper[.]

Contrary to appellants' argument, the complaint and evidence submitted justify the judgment and there was no need for an evidentiary hearing. The complaint alleged:

1. Salmen was a majority stockholder of Insurance Services and because Insurance Services' charter had been revoked by the State of South Dakota, Salmen "must be responsible for the book of business referred to below."

2. United Fire contracted with Insurance Services, allowing Insurance Services to solicit and service the book of business at issue.

3. Insurance Services subsequently defaulted on its obligations to United Fire for the book of business at issue and, as a result, was delinquent and "owed United Fire in excess of $32,000."

As a result, United Fire, in its prayer for relief, sought:

1. An immediate order requiring Insurance Services, Jahner, and Salmen to forthwith transfer immediate possession of the book of business to United Fire.

2. In the alternative, for an immediate order requiring Insurance Services, Jahner, and Salmen to show cause why it should not be ordered to immediately transfer possession of the book of business to United Fire.

3. For judgment against Insurance Services, Salmen and Jahner and in favor of United Fire permanently vesting ownership and possession of the book business in United Fire.

4. For judgment against Insurance Services, Salmen and Jahner in the amount owed United Fire plus interest.

5. For judgment in the amount of United Fire's costs, disbursements and attorneys fees.

6. For such other further relief as is deemed equitable by the court.

At the time the complaint was served and filed, none of the parties knew how many files appellants possessed or what precise value the files had. For this reason, United Fire could not specify a sum

certain in the complaint. However, once it had obtained the files, United Fire submitted an inventory.

Upon ascertaining the value of the files, United Fire presented a motion for default judgment with a supporting affidavit from its marketing director. This affidavit specified that appellants were in default on two obligations. The first was a promissory note personally signed by Salmen with the principal sum of $15,875.40, plus interest. The second debt was in relation to a contract whereby appellants failed to remit premium charges. Attached to the affidavit was an exhibit which detailed the unpaid premiums in an amount of $10,922.05.

■ South Dakota law requires that damages be pled with reasonable certainty. *Croes Family Tr. v. Small Business Admin.*, 446 N.W.2d 55 (S.D.1989); *Wang v. Bekken*, 310 N.W.2d 166, (S.D.1981). The complaint and affidavit in support of default judgment adequately described the damages at issue in this case.

In addition, if appellants believed the complaint was insufficient for not stating a sum certain, their appropriate remedy was to dispute the allegations through a responsive pleading (which has not been done in this case) or to present a motion to dismiss or a motion for more definite statement under SDCL 15–6–12(e).

Finally, there was no need for the trial court to hold an evidentiary hearing on the damages. Appellants admitted monetary liability at the show cause hearing.

Q: [By Mr. Jenson] You acknowledge that you—somebody owes United in excess of $32,000 don't you?

A: [By Mr. Salmen] Yes.

. . . . .

[By Mr. Salmen] We don't contest the fact that we owe the money, and we plan to make it right.

Significantly, at no time did appellants ever dispute United Fire's figures nor did they request a hearing to dispute the same. United Fire provided a detailed affidavit which specified the amounts due from appellants on the promissory note and the contract.

## IV.

Whether the cost of the bond required in a claim and delivery action is a taxable cost under SDCL 15–17–4.

■ As noted earlier, United Fire obtained a replevin bond for the amount of $60,000. The bond cost $420. SDCL 21–15–4 provides:

Before possession of any property may be taken, *there must be furnished a written undertaking with one or more sufficient sureties approved by the sheriff, or a cash deposit, in double the value as stated in the affidavit*, securing return of the property to the defendant if return thereof be adjudged, and the payment to him of any such sum as may, for any cause, be recovered against the plaintiff. (Emphasis added.)

Appellants argue that United Fire is not entitled to recover the cost of a replevin bond as "costs." The trial court awarded the cost of the bond rationalizing that it was "in the nature of a filing fee."

SDCL 15–17–4 [7] provides:

In all cases when a party is allowed to recover costs the clerk shall also tax as part of the judgment the allowance of such party's witnesses', interpreters', translators', officers', and printers' fees, reasonable copying fees, fees for the service of process, filing fees and the necessary expense of taking depositions and procuring necessary evidence.

"A party may recover as costs only those items which are *authorized by statute*." *Magbuhat v. Kovarik*, 445 N.W.2d 315, 317 (S.D.1989) (emphasis added); *Heer v. State*, 432 N.W.2d 559 (S.D.1988); *Hepper v. Triple U Enterprises, Inc.*, 388 N.W.2d 525 (S.D.1986); *Arcon Constr. Co. v. S.D. Cement Plant*, 349 N.W.2d 407 (S.D.1984). In the present case, the applicable statutes do not specifically authorize the recovery of the cost of a replevin bond. Moreover, because there are alternatives to posting a replevin bond, we do not consider the cost

7. SDCL 15–17–4 was repealed by 1992 S.D. Sess.L. ch. 148, § 26. *See* SDCL 15–17–37.

of the bond to be "in the nature of a filing fee." For these reasons, we must reverse on this issue.

## V.

Whether the trial court erred in not allowing United Fire to recover the cost of photocopying the files produced.

By notice of review, United Fire appeals the trial court's refusal to tax as a cost the expense of photocopying appellants' files. The copying fees amounted to $755.75. The trial court has discretion to award *reasonable* copying fees pursuant to SDCL 15–17–4.[8] *Magbuhat*, 445 N.W.2d at 316. Apparently, the trial court did not think the copying fees were reasonable and we find no abuse of discretion.

We have considered the final issue raised in this appeal and find that it is controlled by settled law and is therefore affirmed.

Affirmed in part and reversed in part.

WUEST, HENDERSON and AMUNDSON, JJ., concur.

SABERS, J., concurs in part and dissents in part.

SABERS, Justice (concurring in part and dissenting in part).

I concur to the extent of Salmen's individual liability in the amount of $29,258.34 on the promissory note. I fail to see any basis in this record for Salmen's individual liability for the corporation's debt for overdue premium charges of $12,412.24.

I also question the majority's affirmance of the trial court's denial of copying costs in the amount of $755.75. These copying expenses were incurred by United Fire to provide all parties with copies of the documentary evidence, including insurance policy accounts and records. It appears from the record that at least a substantial part of these copying costs were reasonable and are specifically provided for in SDCL 15–

17–4,* under "reasonable copying fees" and generally provided for under "procuring necessary evidence."

---

8. This statute was repealed by 1992 S.D.Sess.L. ch. 148, § 26.

* SDCL 15–17–4 provides in relevant part:

In all cases when a party is allowed to recover costs the clerk *shall* also tax as a part of the judgment the allowance of such party's ... reasonable copying fees, ... and the necessary expense of ... procuring necessary evidence. (emphasis added).