**Andrea MALINOWSKI v. William FARNAM, Jr. and Luella and William Farnam, Sr.**

[811 A.2d 177]

No. 01-165

August 27, 2002. Andrea Malinowski, mother of two children, ages eleven and nine, appeals from an order of the Bennington Family Court, modifying but not eliminating a grandparent visitation order in favor of the paternal grandparents, Luella and William Farnam, Sr. Mother challenges the constitutionality of Vermont's grandparent visitation statutes, 15 V.S.A. §§ 1011-1016. We decline to reach the constitutional challenge and affirm.

Mother and William Farnam, Jr., were married in 1990, and they were divorced in 1996 in New York, with mother receiving primary custody of their two children subject to father's visitation. In October of 1997, the paternal grandparents petitioned for a visitation order pursuant to the New York grandparent visitation law. At the time, mother lived with the children in Vermont, and father and the grandparents resided in New York. In June 1998, all the parties settled the grandparent visitation proceeding by allowing the grandparents one week of visitation during each summer and one day of visitation during the father's weekend visitation on two weekends of each month. The settlement was embodied in an order of the Rensselaer New York Family Court.

Visitation occurred under the New York order until September 28, 2000, when mother filed a motion in the Bennington Family Court seeking to end grandparent visitation under the New York order. Mother alleged that the grandparents were interfering with her parental decisions and that they failed to follow notification provisions in the order. She further alleged that circumstances had changed since the time of the original order, in that at that time the father had not been communicating with the grandparents, while at the time of the motion the relationship was good and the grandparents could see the children during the father's scheduled weekend visits; that the schedule of visitation was difficult for the children; and that she had recently had a child of a new marriage and wanted the children subject to the order to spend more time with their new brother. She never suggested that the grandparent visitation laws of Vermont or New York were unconstitutional.

The court held hearings on the motion on February 28 and March 5, 2001; the witnesses were mother, father and grandmother. Following the evidence, the trial judge indicated that he was unsure of the standard for modification of a grandparent visitation order and invited the parties to address that question and any other by oral and written argument. During the closing argument, mother's counsel made the following statement:

Generally, regarding the best interest standard, your honor, and regarding the standards in

this case, I think there is clearly, pursuant to the 14th Amendment due process clause, a component that provides heightened protection against governmental intrusion with certain fundamental rights, and I think this includes a parent's fundamental right to make decisions regarding the care and custody and control of their children. This is not a grandparent's right but it's a parent's right.

Andrea testified that she feels that this is no longer in the best interests of the children, and I think this court should place great weight on this testimony. As it is — as I guess, first off, Andrea is fit to make that decision. She is a parent that's fit to make — there's been no testimony that she's an unfit parent; so therefore, she's fit to make the decision as to what is in the best interest of her children

And I would like the court [to] . . . have a case. . . .

. . . .

This is a United States Supreme Court case that was decided in June. It is not on all fours with this case. This is a State of Washington case, but in some ways, it's even more of an extreme situation than we have here. . . .

. . . .

[The Supreme Court] held that the [grandparent visitation] statute in question is — unconstitutionally it infringes on a parent's fundamental right to rear their children.

And some of the arguments they made earlier are the arguments that the court made; that is, that it violated the mother's right to make decisions regarding concerning the care, custody, control of her daughter. It cited the 14th Amendment's due process clause which includes a parent's fundamental right to make decisions concerning the care, custody and control of their children. And I believe that this court must consider that right when considering the criteria set out in our statute.

Because any friction between the grandparents and the parents — and there seems to be friction both with Mrs. Malinowski and her ex-husband, with his parents. Any infringement by the grandparents into their zone is an *infringement of their fundamental right, my client's fundamental right,* and it can only lead to the conclusion that it's not in the best interests of the children.

The case that mother's counsel provided the court was *Troxel v. Granville,* 530 U.S. 57 (2000).

The court granted the motion in part and denied it in part. It cut the weekend grandparent visitation to one day per month and maintained the summer visitation. Generally, the court rejected the mother's primary concern that the grandparents were interfering with her parental decision making and rights by allowing the children to watch certain television shows or by giving them items she did not want them to have. The court found that the mother had not communicated her concerns to the grandparents. The court did find, however, that changes in the children's activities made the Saturday grandparent visitation schedule

inconvenient and that the good relationship between the grandparents and the father made it far more likely that the grandparents would see the children through the father. These factors led to the modification decision.

Mother makes two arguments on appeal: (1) Vermont's grandparent visitation statute is unconstitutional because it denies mother due process of law as set out in *Troxel*; (2) Vermont's grandparent visitation statute is unconstitutional as applied to this case. For four interrelated reasons, we do not reach the issues briefed by mother and affirm.

First, mother did not raise the issues she seeks to raise here in the family court. See *Jakab v. Jakab*, 163 Vt. 575, 581-83, 664 A.2d 261, 264-65 (1995); *Varnum v. Varnum*, 155 Vt. 376, 382-83, 586 A.2d 1107, 1110-11 (1990). At best mother's counsel argued that as a result of *Troxel* the family court had to consider mother's due process right to make parenting choices *"when considering the criteria set out in our statute,"* (emphasis supplied), and "[a]ny infringement by the grandparents into [the parents'] zone is an infringement of their fundamental right, my client's fundamental right, and it can only lead to the conclusion that it's not in the best interests of the children." Counsel declined the court's offer to submit a written memorandum of law to explain mother's legal position with respect to *Troxel*. Counsel did not argue that the Vermont grandparent visitation statute was unconstitutional on its face, or even that it would be unconstitutional as applied if the court did not grant mother's motion. Not surprisingly, the family court never ruled on the issues presented on appeal, likely because the judge never thought they were before him.

Mother makes much of the fact that grandparents offered no evidence that she was unfit to make the decision to terminate and "no evidence was presented to overcome the presumption in favor of [mother's] fundamental right to make parenting decisions regarding her children's visits with a non-parent." In fact, assuming the truth of this assertion, grandparents had no opportunity to offer such evidence because mother's counsel introduced the *Troxel* issue in closing argument only after the evidence was closed. Mother's argument about lack of evidence only heightens our sense that this record is inadequate to address the serious issues raised by *Troxel*, see *Jakab*, 163 Vt. at 582, 664 A.2d at 265, and it would be unfair to the grandparents to do so.

Second, mother attacks the Vermont grandparent visitation statute even though the order was issued in New York under a different statutory scheme. The only relevance of the Vermont statute is that mother invoked it to support a termination of the New York order and now attacks its constitutionality to obtain relief. The parties and the children reside in the same locations as they did when the New York grandparent visitation order was issued — mother and the children in Vermont, father and grandparents in New York.\* While the Vermont family court had jurisdiction .to hear mother's motion, we believe her attack is more properly directed to the New York

---

\* The situation is different from that which we encountered in *Cavallari v. Martin*, 169 Vt. 210, 732 A.2d 739 (1999), where all parties subject to a child support order had moved from New York to Vermont, and the issue was whether the order terminated when the child reached 18 (the Vermont rule) or 21 (the New York rule). We held that "[w]hen the parties, including the child, all move to this state, Vermont's courts are responsible for the welfare of the child, and New York no longer has a legitimate interest in the relationship." *Id.* at 215, 732 A.2d at 743. Here, the grandparents and father remained in New York.

order and law, New York Domestic Relations Law § 72. See *Strouse v. Olson,* 397 N.W.2d 651, 655 (S.D. 1986) (the law of Iowa, the state which issued the grandparent visitation order under its statute, controls in determining the validity of the order after Iowa law has changed). We note that the New York courts have so far found the New York grandparent visitation statute constitutional under *Troxel.* See *Hertz v. Hertz,* 738 N.Y.S.2d 62, 65 (App. Div. 2002); *Morgan v. Grzesik,* 732 N.Y.S.2d 773, 776 (App. Div. 2001).

Third, the New York order resulted from a voluntary stipulation among the parties, and there were no findings initially. See *Buehrer v. Lambert,* 2002 WL 1371062, at *2 (Ohio Ct. App. 2002) (application of *Troxel* is different where parent seeks to rely on it to terminate a preexisting grandparent visitation order, entered by stipulation of the parties). Although *Troxel* had not been decided at that time, the arguments on which the *Troxel* decision is based were clearly available then. We recognize that a voluntary order can be modified, but reliance interests and bonding issues are likely to arise over the years of compliance with the visitation order. See *id.; In re T.A.,* 38 P.3d 140, 143 (Kan. Ct. App. 2001) (grandparents can rebut presumption required by *Troxel* by showing "that a substantial relationship has been established between the child and the grandparents" and that grandparent visitation is in the best interests of the child). These factors were not explored because mother failed to raise the constitutional question before the evidence was submitted. We note, however, that the family court found that one of the reasons the grandparents sought visitation in the first instance is that the children lived with the grandparents "[d]uring some of the early years of the marriage," and the grandparents often cared for the children while the parents worked.

Finally, the family court's order attempted to respond to the mother's interests as the family court understood them. The court found that if the grandparents were interfering with mother's parenting decisions, they were doing so unintentionally because mother failed to communicate those decisions to grandparents.

It is important to recognize the limits of mother's interests in this case. She concedes that father can lawfully allow the grandparents to use part of his visitation time. Yet, the grandparent visitation in issue appears to come entirely from father's visitation time. Almost all the evidence was about the two Saturdays per month, now reduced to one Saturday per month, in which the grandparents exercised visitation. Father otherwise had visitation for those weekends, and the grandparent visitation came from his visitation. The week of grandparent visitation in the summer also apparently came from father's time because it defaulted to father if the grandparents failed to exercise it.

Although father testified that it would be preferable if grandparent visitation were not governed by a court order, he never joined the motion to modify and has not entered this appeal. Mother cannot rely on his rights to obtain the relief she desires.

The day will come when we must judge the constitutionality of Vermont's grandparent visitation statute under *Troxel v. Granville.* This is not that day.

*Affirmed.*