SIMONS, Respondent, v. KIDD, Appellant

(41 N. W.2d 840)

(File No. 9067-9075. Opinion filed March 22, 1950)

282

**Davenport, Evans & Hurwitz,** Sioux Falls, for Defendant and Appellant.

**Blaine Simons, J. Gene McDonnell,** Sioux Falls, for Plaintiff and Respondent.

SMITH, J. The above named deceased, his wife, and their only child were fatally injured on a highway south of Sioux Falls on the evening of October 23, 1948. Death came to the infant child and the father within a very short time after their injuries were received, but the mother lingered until October 27, 1948. After her death, on the theory that the death of James Knight, the husband, was caused by the negligence of the defendant, Marvin Kidd, the administrator

of the estate of the husband brought this action under SDC 37.22 for the sole benefit of the estate of the wife.

The question presented for decision by this appeal of defendant from an adverse judgment is whether the cause of action for the wrongful death of the husband alleged to have accrued to the wife as the sole beneficiary under the cited act, survived her death, and hence can be prosecuted by the administrator of the husband's estate for the benefit of her estate.

The cause of action is founded upon statutes reading in part as follows:

"Whenever the death or injury of a person shall be caused by a wrongful act, neglect or default, and the act, neglect, or default is such as would, have entitled the party injured to maintain an action and recover damages in respect thereto, if death had not ensued, then and in every such case, the corporation which, or the person who, would have been liable, if death had not ensued, or the administrator or executor of the estate of such person as such administrator or executor, shall be liable to an action for damages, notwithstanding the death of the person injured, * * *." SDC 37.2201, as amended by Ch. 172, Laws of 1947.

"Every such action shall be for the exclusive benefit of the wife or husband and children, or if there be neither of them, then of the parents and next of kin of the person whose death shall be so caused; and it shall be brought in the name of the executor or regular or special administrator of the deceased person; and in every such action the jury may give such damages, not exceeding in any case ten thousand dollars as they may think proportionate to all injury resulting from such death to the persons respectively for whose benefit such action shall be brought. * * *" SDC 37.2203, as amended by Ch. 173, Laws of 1947.

It has been determined that these sections provide for a new cause of action on behalf of the specified beneficiaries for the injury resulting to them from the described death, and do not provide for the survival of the cause of action of the deceased for personal injury. Simons v. Kidd, 73 S.D. 41, 38 N.W.2d 883; Petersen v. Kemper, 70 S.D. 427, 18 N.W.2d 294; Jensen v. Juull, 66 S.D. 1, 278 N.W.

6, 115 A.L.R. 1280; Ulvig v. McKennan Hospital, 56 S.D. 509, 229 N.W. 383; and Rowe v. Richards, 35 S.D. 201, 151 N.W. 1001, L.R.A., 1915E, 1075, Ann. Cas. 1918A, 294.

The act which created this new cause of action for wrongful death makes no provision for the claimed survival. To the contrary, courts, whose views merit the highest respect, have read from like statutes, providing for a cause of action for the "exclusive benefit" of named benefiiciaries, a legislative intention to proscribe such a survival as is here asserted. Doyle v. Baltimore & O. R. Co., 81 Ohio St. 184, 90 N.E. 165, 135 Am.St.Rep. 775; Schmidt v. Menasha Woodenware Co., 99 Wis. 300, 74 N.W. 797, 798. In the last cited case the court wrote: "The fact that certain beneficiaries named therein take to the exclusion of others would seem to indicate that the legislature never intended that the provisions should inure to the benefit of persons not named therein." Cf. Note, 17 Ann.Cas. 773.

Finding no provision for the survival of the wife's cause of action in the act on which it is founded, we look for such a provision in our survival statutes. Because our inquiry deals with survival upon the death of the owner of a thing in action, it must center on the construction of SDC 51.0803, which reads in part as follows: "A thing in action arising out of the violation of a right of property or out of an obligation may be transferred by the owner. Upon the death of the owner it passes to his personal representatives except where in the cases provided by law it passes to his devisees or successor in office." A thing in action is defined by SDC 51.0802 as "a right to recover money or other personal property by a judicial proceeding."

It is apparent that SDC 51.0803, supra, was enacted to invest certain causes of action with the qualities of assignability and survivorship. It will be observed that two classes of things in action so invested are (1) those arising out of the violation of a property right, and (2) those arising out of an obligation. We must determine whether the thing in action which accrued to the wife under the wrongful death act upon the death of her husband, James Knight, because of the alleged negligence of defendant, is comprehended by either or both of the listed classes of things in

action. We elect to deal with these classes in inverse order.

In Sherman v. Harris, 36 S.D. 50, 153 N.W. 925, Ann. Cas. 1917C, 675, in passing upon the validity of an assignment of a claim for damages for fraud and deceit in procuring a subscription to the capital stock of a banking corporation by the assignor, this court considered the meaning of the quoted provisions of SDC 51.0803 as it then appeared in Section 384, Civil Code, Revised Code of 1903, and determined that the word "obligation" in the sentence "a thing in action, arising * * * out of an obligation, may be transferred by the owner" was employed by the legislature in its broadest sense and embraces all the obligations described in the Third Divison of the Civil Code, Revised Codes of 1903. From an examination of sections 1114 to 2283, inclusive, contained in the described portion of that code, it will be observed that this pronouncement brought within the sweep of the word "obligation", employed in the section under consideration, obligations arising from contract, obligations arising from particular transactions by operation of law, and obligations imposed by law. The holding was that the assignment there in question was valid, which by implication included a holding that a thing in action of the kind there under consideration would survive the death of its owner.

The problem which confronted this court in Sherman v. Harris was presented to the court of our sister state under identical statutory provisions and similar facts in Grabow v. Bergeth, 59 N.D. 214, 229 N.W. 282, 287. The lucid opinion of Mr. Justice Birdzell demonstrates, we think, that this court erred in holding that the word "obligation" was employed in the predecessor of SDC 51.0803 in its broadest sense. To reflect the logic of that opinion in all its force would require that we reproduce much of its contents. It is available to those interested. Our present purpose will be adequately served by presenting its reasoning in bare outline.

It reasons that to assign the broadest signification to the word "obligation" in the clause "arising out of the violation of a right of property or out of an obligation", as was

done by this court, is to cause the sentence to say that all things in action are assignable and survive the death of an owner. By reference to many cognate sections of statute, common to our two states, the opinion establishes that the legislature understood and intended that certain rights of action would not survive the death of an owner. By way of example, we quote from the opinion as follows: "Turning now to the Probate Code, section 8798 provides that actions for the recovery of real or personal property, or for the possession thereof, and actions founded upon contracts, may be maintained by and against executors and administrators in the same courts in which the same might have been maintained by or against their respective testators and intestates. Section 8800 provides that executors and administrators may maintain actions against any person who has wasted, destroyed, taken, carried away, or converted, the goods of their testator or intestate in his lifetime; also for trepass committed on real estate. * * * It may well be asked, Why did the Legislature enumerate the actions to which executors and administrators might be parties in their representative capacity and limit them to such as should affect the property rights of the deceased in specific property, if all rights of action were deemed passed to his personal representatives by virtue of section 5446 of the Civil Code?"

Having thus made it obvious that the word "obligation" was employed in the statute under consideration in a limited sense, the opinion makes it plain that the legislature intended that word to comprehend only those obligations which arise from contracts, or from particular transactions by operation of law, and that it did not intend the word to embrace obligations imposed by law on all persons.

The authoritative force of this phase of the decision of Sherman v. Harris, supra, was destroyed by implication by the decision of this court in Ulvig v. McKennan Hospital, 56 S.D. 509, 229 N.W. 383. A cause of action arising out of the breach of an obligation imposed by law was under consideration, viz., a sause of action for damages for personal injury by negligence, and it was held that such a cause of action does not survive the death of the injured person.

■ ■ We are in complete agreement with the reasoning and conclusion of Grabow v. Bergeth, supra. Therefore, we now expressly declare that which was implied by Ulvig v. McKennan Hospital, supra, viz., that the construction placed upon the word "obligation," now appearing in SDC 51.0803, in Sherman v. Harris, supra, is overruled and hold the word was not intended to comprehend those obligations imposed by law upon all persons indifferently. Cf. SDC 47.0103. It follows, of course, that the cause of action which accrued to Mrs. Knight is not within the class of things in action arising from an obligation to which reference is made in SDC 51.0803 because it arose from an obligation imposed by our law on all persons indifferently. Cf. SDC 47.0304 and SDC 37.22

The question remains whether the cause of action we are considering is of the character described by SDC 51.0803 as "a thing in action arising out of the violation of a right of property." We understand this to be the theory on which the plaintiff seeks to support the judgment of the trial court. He urges upon us the case of Van Beeck v. Sabine Towing Co., 300 U.S. 342, 57 S.Ct. 452, 455, 81 L.Ed. 685. In that case in dealing with a like question under federal statutes and the common law, the late Mr. Justice Cardozo, in writing for the court used the following words: "When we remember that under the death statutes an independent cause of action is created in favor of the beneficiaries for their pecuniary damages, the conclusion is not difficult that the cause of action once accrued is not divested or extinguished by the death of one or more of the beneficiaries thereafter, but survives, like a cause of action for injury to a property right or interest, to the extent that the estate of the deceased beneficiary is proved to be impaired. To that extent, if no farther, a new property right or interest, or one analagous thereto, has been brought into being through legislative action. True, there are decisions under the death statutes, of some states that teach a different doctrine, refusing to permit a recovery by the administrator after the beneficiary has died, though the ruling has been made at times with scant discussion of the problem. * * * We think the cases favoring survival within the limits al-

ready indicated are supported by preponderant authority and also by the better reason.

In our study of the conflict in the authorities, cf. 25 C.J.S., Death, 1132, § 40; Annotation 13 A.L.R. 225; Scott Auto & Supply Co. v. McQueen, 110 Okl. 107, 226 P. 372, 34 A.L.R. 162; and Chicago, B. & Q. R. Co. v. Wells-Dickey Trust Co., 275 U.S. 161, 48 S.Ct. 73, 59 A.L.R. 760, we find the same view expressed in Meekin v. Brooklyn Heights R. Co., 164 N.Y. 145, 58 N.E. 50, 51, 51 L.R.A. 235, 79 Am.St. Rep. 635, under a survival statute which authorized an executor or administrator to maintain an action "for wrongs done to the property, rights, or interests of another * * *." 2 Rev.St., 9th Ed., N.Y.P.1907. In dealing with the survival of the right of action of the beneficiary under a wrongful death act similar to ours, the court said, "The question, therefore, is whether the right of action created by the act of 1847, and continued by the Code of Civil Procedure, is to recover damages for wrongs done to the property rights or interests of another, or for injuries to the person of the decedent. Some confusion has arisen because the statute creates a property right out of an injury to the person, and confers it, not upon the one injured, but upon his representatives, for the benefit of his wife and next of kin. The theory of the statute is that damages should be recovered for injuries to the estate of the beneficiaries of the action, which injuries were caused by the death of the decedent. The benefiiciaries named in the statute sustain such a legal relation to the deceased, by blood or marriage, that it is presumed they would have been pecuniarily benefited by his continuance in life, and hence damages are allowed for a wrongful act or omission causing his death. If he had lived, the support, education, or services required from him by law, as well as benefits in the nature of gifts conferred in the past, might have been continued, to the pecuniary advantage of the beneficiary. So, the decedent, by continuing to live, might increase his estate, and thus increase the amount to be inherited from him upon his death in the course of nature. Hence the statute declares that the damages awarded shall be a fair and just compensation for the pecuniary injuries resulting from the death, not to the per-

son injured, but to the person for whose benefit the action is brought. While a personal injury must cause the death, damages are allowed, not for an injury to the person deceased, but for an injury to the estate of the beneficiary. The statute thus contemplates the indirect, rather than the direct, effect of the wrongful act. This is evident from the well-settled law that nothing can be recovered for the pain or suffering of the deceased, if he lingers before dying, or for punitive damages, even when aggravating circumstances would warrant them if the action were between the person injured and a person inflicting the injury. The amount of damages in this class of cases depends upon the value of the reasonable expectation of pecuniary benefiits from the continuance in life by the decedent to the husband or wife and next of kin. This is a right of property which becomes vested in the beneficiaries at the moment of death, and can be converted into money through a statutory action brought for their benefit by the personal representatives, who are simply trustees for the purpose. * * * Thus the statute creates a right of action for damages to the estate of the beneficiaries caused by a wrongful act or omission which deprived them of some pecuniary benefit reasonably to be expected from the continuance in the life of the decedent. * * *''

The foregoing view meets with sharp criticism in Gilkeson v. Missouri Pacific R. Co., 222 Mo. 173, 121 S.W. 138, 24 L.R.A., N.S., 844, 17 Ann. Cas. 763 and in McHugh v. Grand Trunk Railway Co., Vol. 2, 1901 Ontario Law Reports 600.

As we have indicated we think SDC 51.0803 was enacted to establish the rule which would govern in determining whether a particular thing in action is of the kind which can be assigned by an owner, or upon his death will survive to his personal representatives. Hence, whether the right of action, which accrued to Mrs. Knight under the wrongful death act, arose out of the violation of such a property right as was contemplated by the legislature in adopting SDC 51.0803, is the question which confronts us.

The difficulty which arises in understanding the meaning the legislature intended to convey by the words "a

thing in action arising out of the violation of a right of property", and from the section as a whole, flows from the fact that in the legislative session of 1877 in which the Civil Code, containing the provisions of the section now designated as SDC 51.0803, was re-enacted, the probate code was enacted containing sections dealing with the same subject matter, as follows:

"Actions for the recovery of any property, real or personal, or for the possession thereof, and all actions founded upon contracts, may be maintained by and against executors and administrators, in all cases and in the same courts in which the same might have been maintained by or against their respective testators or intestates." § 211, Probate Code, 1877 Rev.Code.

"Executors and administrators may in like manner maintain actions against any person who has wasted, destroyed, taken, or carried away, or converted to his own use, the goods of their testator or intestate in his lifetime. They may also maintain actions for trespass committed on the real estate of the decedent in his lifetime." § 212 id.

These provisions have remained in our statutes and are now in force as a part of Ch. 158, Laws of 1947.

The purpose of the cited legislation is best understood by the light of history. The text on Abatement and Revival, 1 C.J. 174 and 175, §§ 303 and 304, 1 C.J.S., Abatement and Revival, § 132, includes the following:

"At common law the principle of most general application in regard to the survival and abatement of causes of action is that those enforceable by personal actions, in form ex delicto, do not survive. * * *"

The harsh rule of the early common law that all personal actions died with the person was modified in England by the statute of 4 Edw. III, which authorized executors to maintain actions of trepass for chattels taken and carried away in the lifetime of their testators; and this remedy was subsequently extended to executors of executors, and to administrators. By the liberal constructions which this statute always received it was made to extend to all cases of injury to personal property, whether the same was actually carried away or not; but the remedy was only given in

favor of personal representatives, and not against the executors and administrators of deceased wrongdoers, and as to injuries to the person or to real property the common law remained unchanged until the enactment of the statutes of 3 & 4 Wm. IV, which gave to executors and administrators rights of action for torts to real as well as to personal estate."

A similar historical picture is reflected in Van Beeck v. Sabine Towing Co., supra.

■ Thus it is obvious that the sections we are considering were enacted to modify the harsh rule of the common law. However, on the one hand, by SDC 51.0803 the legislature has provided that all things in action arising out of the violation of a right of property or out of an obligation shall, upon the death of an owner, pass to his personal representative, and on the other hand, by Ch. 158, Laws of 1947, it has limited the actions to which such personal representative can be a party to actions, (1) founded on contract (2) for the recovery of any property, real or personal, or for the possession thereof (3) against any person who has wasted, destroyed, taken, or carried away, or converted to his own use, the goods of their testator or intestate in his lifetime, and (4) for trespass committed on the real property of the estate of decedent in his lifetime.

■ ■ These statutes deal with the same subject matter. Hence, as was pointed out in the case of In re Schneider's Estate, 72 S.D. 174, 31 N.W.2d 261, we must presume that they stem from one policy an are intended to be consistent and harmonious. They can be brought into harmony only if Ch. 158, Laws of 1947, is treated as a legislative interpretation of SDC 51.0803. To enumerate the particular causes of action, arising from wrongs involving specific objects of property, that a personal representative is authorized to prosecute as is done in Ch. 158, Laws of 1947, was a futile and useless act, if the legislature intended SDC 51.0803 to be read according to its letter as providing that every character of cause of action arising out of the violation of a right of property shall survive the death of an owner, and be enforceable by his personal representative. The conclusion is impelled that the legislature sought to describe in Ch.

158, Laws of 1947, all of the things in action which it intended to invest with the qualities of survivorship and assignability by the more general language of SDC 51.0803.

■ ■ With this background, we look at the thing in action which is alleged to have accrued to Mrs. Knight upon the death of her husband. By the wrong of the defendant a life and a relationship was destroyed from which she was regularly receiving pecuniary benefits, and which promised future pecuniary gain. Because that wrong destroyed a source of gain to the wife which the law has sought to protect by the wrongful death act, we assume, without deciding, that within the broadest signification it might be said that defendant thereby violated a right of property of Mrs. Knight. Cf. 50 C.J., Property, 730, § 3. However, the defendant, by his alleged wrongful act, did not waste, destroy, take or carry away, or convert to his use, any object of property owned by Mrs. Knight. He but cut off her opportunity for gain. It seems obvious to us that the causes of action for wrongs to property rights, described in Ch. 158, Laws of 1947, and therefore in SDC 51.0803, deal solely with direct wrongs to specific objects of property or ownership, and fails to comprehend wrongs which merely prevent promised pecuniary gains or produce losses and thus reduce one's total wealth or estate. It follows, we are of the opinion, that the words "arising out of the violation of a right of property" fail to provide the judgment of the trial court with support.

In arriving at the foregoing conclusion we have not overlooked the fact that Sherman v. Harris, supra, involved a claim for pecuniary loss through a naked deceit, and the holding was that it was assignable "whether we consider the tort in question as one violating a right of property or as arising out of the violation of an obligation imposed by law". [36 S.D. 50, 153 N.W. 928] We are also aware of the fact that, in so far as that holding was grounded on the words "arising out of the violation of a right of property" it has not been disturbed by Ulvig v. McKennan Hospital, supra, or any other decision of this court, and the sections have been since re-enacted as a part of the 1939 Code. Suffice it to say, if that phase of Sherman v. Harris, supra,

stands, it does not invest us with power to extend that holding and declare every tort which impinges upon the pecuniary interests of the party who is wronged gives rise to a cause of action which survives his death.

Being of the opinion that the alleged cause of action which accrued for the benefit of Mrs. Knight upon the death of her husband did not survive her death, other matters assigned and argued have not been considered.

The judgment of the trial court is reversed.

All the Judges concur.