**Merlin CLOCK, Appellant,**

v.

**L.M. LARSON, Individually, Larson's River City Insurance Agency, Ltd., and IMT Insurance Company, Appellees.**

No. 96–29.

Supreme Court of Iowa.

June 18, 1997.

Tito Trevino of Trevino Law Office, Fort Dodge, and Joseph W. Fernandez of Walker Law Firm, Des Moines, for appellant.

John M. Wharton and Joseph M. Barron of Peddicord, Wharton, Thune & Spencer, P.C., Des Moines, for appellees L.M. Larson and Larson's River City Insurance Agency, Ltd.

Darrell J. Isaacson and Richard R. Winga of Laird, Heiny, McManigal, Winga, Duffy & Stambaugh, P.L.C., Mason City, for appellee IMT Insurance Company.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, LAVORATO, and NEUMAN, JJ.

HARRIS, Justice.

Upon being sued for a grievous tort injury, and in view of modest liability insurance limits, an insured brought this suit against his insurance agent and insurer, claiming they should have provided greater coverage. As a part of a settlement with the tort plaintiff, the insured assigned her all his interest in the suit. But when, as assignee, the tort plaintiff then pressed the present suit, it was dismissed on the finding that the settlement fixed the limits of her right to recovery. We affirm.

Betty Naber was injured when she fell from an unfinished and unprotected catwalk in a barn located on property she was renting from Merlin Clock. The result was tragic; Naber was rendered a paraplegic. At the time of the accident Clock had $100,000 of liability insurance coverage with the defendant, IMT Insurance Company, which had been procured by Clock's insurance agent, defendant L.M. Larson, and his agency. Clock claims he had requested Larson to obtain a $1 million umbrella liability policy with IMT but no such policy had been procured.

Naber brought a tort and contract action against Clock seeking damages for the injuries she suffered in her fall. IMT provided Clock with defense counsel. Clock subsequently filed the present declaratory judgment action against Larson, his agency, and IMT, alleging breach of contract and negligence for the failure to procure the umbrella liability policy.

Clock and Naber thereafter entered into a settlement agreement in her tort and contract action. Under the settlement agreement Naber agreed to accept $110,000 from Clock (with $100,000 paid by IMT and $10,000 paid personally by Clock) in exchange for releasing her tort claim against Clock. As part of the agreement, Clock assigned his interest in his declaratory judgment action (the present suit) to Naber. Naber agreed to dismiss her tort suit against Clock with prejudice and not to pursue any claim against him arising from the accident. Naber dismissed her lawsuit against Clock accordingly.

Naber, as assignee in the present suit and in Clock's name, filed an application to adjudicate law points pursuant to Iowa rule of civil procedure 105 to determine whether the declaratory judgment action could be maintained after the settlement agreement and dismissal of the underlying tort suit. Ruling on this motion, the trial court determined: (1) the settlement agreement released any further underlying tort liability of Clock to Naber; (2) the dismissal with prejudice constituted an adjudication of the merits of the tort liability of Clock to Naber; (3) the defendants did not refuse to defend Clock; (4) the defendants were not bound by the $10,000 amount paid by Clock to Naber as damages; and (5) the settlement agreement fixed the maximum amount that Naber, as Clock's assignee, could recover in this case at $10,000. We granted Clock permission to bring an interlocutory appeal and also granted defendants' application to bring an interlocutory cross-appeal. Our review is on error. *Hagen v. Texaco Ref. & Mktg. Inc.*, 526 N.W.2d 531, 534 (Iowa 1995).

I. The appeal is controlled by our opinion in *Red Giant Oil Co. v. Lawlor*, 528 N.W.2d 524 (Iowa 1995), a case in which we determined that the settlement of a tort claim was not dispositive of the insured's suit against the insurer for failure to provide adequate coverage. The facts in *Red Giant* are important because they differ in two crucial ways from those here.

Red Giant Oil Company had settled a tort suit against Alfred Coyle for alleged negligent work on its premises. *Red Giant*, 528 N.W.2d at 527. Red Giant then brought a declaratory judgment action against Coyle's insurance agent and his insurer. *Id.* at 526–27. The action against the agent was based on the agent's claimed failure to procure coverage for Coyle. *Id.* at 527. The action against the insurer was based on its alleged bad faith in willfully denying coverage and refusing to defend Coyle. *Id.* In the settlement of the underlying tort suit, Coyle had confessed judgment for the full amount of Red Giant's damages and assigned his rights against the agent and insurer to Red Giant. *Id.* In exchange, Red Giant agreed not to execute on the judgment. *Id.*

The district court granted the agent's and insurer's motion for summary judgment. *Id.* at 528. The district court ruled that under the settlement agreement Coyle was not "legally obligated to pay" Red Giant because the agreement provided a covenant not to execute on the judgment. Coyle therefore was not entitled to indemnification under the policy. *Id.* at 528–29. Red Giant thus received no enforceable right against the agent or the insurer under the assignment of the declaratory judgment action. *Id.*

We reversed, relying on two controlling factors, both of which are lacking here. The insurer in *Red Giant* had not provided a defense in the underlying tort suit. We said we were prompted to adopt the rationale "that an insurer may not hide behind policy language after it abandons its insured and the insured settles the claim by ... agreement." *Id.* at 533.

The second factor was the nature of Coyle's relinquishment: a covenant not to execute, which we carefully distinguished from a full release. *Id.* at 532 (explaining the covenant not to execute was "merely an agreement by Red Giant and not a release"). We emphasized that an insured is still legally obligated to pay when there is a covenant not to execute on a judgment. But when there is a full release there is no further liability owed by the insurance company to its insured, and therefore the insured has no right to recover against the insurance company which can be assigned to the injured party. *Id.*

The facts in the present case differ sharply with regard to both the foregoing factors. First, as mentioned, IMT did not refuse to defend Clock in Naber's tort suit. Clock was fully defended by IMT and IMT paid the $100,000 policy limit as part of the $110,000 settlement.

Second, the settlement provided Clock with far more than a covenant not to execute. By dismissing her claim with prejudice, and agreeing not to bring any other legal action against him, Naber released Clock from any liability other than the $10,000 he personally paid her. Unlike *Red Giant,* here there is a full and complete release of all claims of liability against Clock other than the $10,000.

It is not necessary for us to decide whether either of these two distinguishing factors, standing alone, would be sufficient to distance our holding here from that in *Red Giant.* It is enough for us to hold, and we do, that, taken together, they demand a contrary result. The trial court was correct in so holding.

II. The defendants cross-appeal to assert error in the trial court's refusal to grant them summary judgment and limit their liability to $10,000. They can claim no such error because the trial court did precisely that in adjudicating law points. The district court acted properly in limiting the possible liability of defendants to $10,000.

**AFFIRMED ON BOTH APPEALS.**