1998 SD 20

**Dominic J. KOBBEMAN, Plaintiff and Appellant,**

v.

**David C. OLESON, Sr. and Kahler, Inc., a South Dakota Corporation, d/b/a Kahler Insurance Agency, Defendants and Appellees.**

**No. 19915.**

Supreme Court of South Dakota.

Considered on Briefs Sept. 11, 1997.

Decided Feb. 25, 1998.

Paul S. Swedlund, G. Verne Goodsell of Gunderson, Palmer, Goodsell & Nelson, Rapid City, for plaintiff and appellant.

Rexford A. Hagg, Kevin W. Klapprodt of Whiting, Hagg & Haag, Rapid City, for defendants and appellees.

KONENKAMP, Justice.

[¶ 1.] After his injury in an automobile accident, Dominic Kobbeman collected the policy limits from the tortfeasor's insurance company, but Kobbeman believed his damages exceeded that amount. He took an assignment of the tortfeasor's cause of action against his insurance agents in exchange for a covenant not to execute on any judgment Kobbeman might obtain against him. Kobbeman then sued the agents for failure to procure additional insurance. The trial court granted summary judgment for the agents holding the tortfeasor had sustained no loss for lack of added insurance, nor could he ever incur damages by virtue of the covenant, thus no valid cause of action had accrued. Is an assignment in which a plaintiff agrees not to execute on any judgment obtained in the underlying tort action ineffective because the covenant relieves the tortfeasor of any obligation to pay damages? As the covenant was not a full release and left the tortfeasor open to litigation, we uphold the assignment, but because the statute of limitations expired on Kobbeman's claim against the tortfeasor, we affirm summary judgment.

**Facts**

[¶ 2.] On September 5, 1990, Raul Daniel met with David Oleson of the Kahler Insurance Agency to purportedly ask Oleson to secure a personal umbrella liability policy with limits of $1 million to cover Raul and his family, including his son, Christopher. Whether the conversation related to increasing limits on an existing homeowner policy, rather then securing a new umbrella policy, remains in dispute. Raul wrote a check to Kahler for what he believed to be the prorated premium on an umbrella policy, but the agency applied the payment to increase Raul's existing homeowner policy limits.

[¶ 3.] On July 7, 1993, Christopher Daniel injured Dominic Kobbeman in a motor vehicle accident. State Farm, the Daniels' motor vehicle liability carrier, concluded Christopher was at fault and paid Kobbeman its policy limits of $100,000. Having been advised Kobbeman's claimed damages might exceed that amount, Raul contacted Kahler about the umbrella policy and learned Oleson had not obtained one. In exchange for a covenant not to execute on any judgment obtained against them, on December 23, 1993, the Daniels gave an assignment to Kob-

beman of their cause of action against Oleson and Kahler.[1]  On December 2, 1994, Kobbeman brought suit against Oleson and Kahler for failure to obtain the umbrella policy.  He had not first secured a judgment against Christopher; in fact, Kobbeman did not commence suit against Christopher until after the statute of limitations had expired in July, 1996.  Defendants moved for summary judgment contending that by virtue of the covenant not to execute and the expiration of the statute of limitations applicable to the motor vehicle accident, Christopher could suffer no damages and thus an essential element of the cause of action was missing.  The circuit court granted the motion.  Kobbeman appeals, asking whether a person protected by an agreement not to execute has an assignable cause of action against insurance agents who allegedly failed to procure requested insurance and whether the assignment effectively waived the limitations period.

### Standard of Review

[¶ 4.] Under our familiar standard for reviewing summary judgments, we decide only whether genuine issues of material fact existed and whether the law was correctly applied.  If any legal basis emerges to support the trial court's ruling, we will affirm.  *De Smet Ins. Co. of South Dakota v. Gibson,* 1996 SD 102, ¶ 5, 552 N.W.2d 98, 99; *Garrett v. BankWest, Inc.,* 459 N.W.2d 833, 837 (S.D. 1990); *Pickering v. Pickering,* 434 N.W.2d 758, 760 (S.D.1989); SDCL 15–6–56(c).  With the material facts undisputed, our review is limited to determining whether the trial court correctly applied the law.  Contract interpretation is a question of law.  *State Farm Mut. Auto. Ins. Co. v. Vostad,* 520 N.W.2d 273, 275 (S.D.1994).  Summary judgment is a preferred process to dispose of legally unmeritorious claims.  *Horne v. Crozier,* 1997 SD 65, ¶ 5, 565 N.W.2d 50, 52; *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265, 276 (1986) (citations omitted).

### Analysis and Decision

[¶ 5.] Insurance agents are usually obligated to obtain the type and amount of insurance applicants request.  *See City of Colton v. Schwebach,* 1997 SD 4, ¶ 10, 557 N.W.2d 769, 771; *Rumpza v. Larsen,* 1996 SD 87, ¶ 12, 551 N.W.2d 810, 813; *Trammell v. Prairie States Ins. Co.,* 473 N.W.2d 460, 462 (S.D.1991)(duty of insurance agent is to procure insurance of kind specified by insured).  Upon a breach of this duty, the measure of damages is the amount the insurer would have paid on behalf of the insured had the desired coverage been obtained.  *See generally Heinert v. Home Federal Sav. & Loan Ass'n of Sioux Falls,* 444 N.W.2d 718 (S.D.1989); *Kenyon v. Larsen,* 205 Neb. 209, 286 N.W.2d 759, 764 (1980); *Virginia First Sav. & Loan Ass'n v. Wells,* 224 Va. 691, 299 S.E.2d 370, 372 (1983); *Pickhover v. Smith's Mgmt. Corp.,* 771 P.2d 664, 670 (Utah Ct. App.1989); *Wheaton Nat. Bank v. Dudek,* 59 Ill.App.3d 970, 17 Ill.Dec. 487, 490, 376 N.E.2d 633, 636 (1978); *Greenfield v. Insurance Inc.,* 19 Cal.App.3d 803, 97 Cal.Rptr. 164, 169 (1971).

[¶ 6.] Civil actions founded on negligence or fraud require damages as an essential element.  *Lien v. McGladrey & Pullen,* 509 N.W.2d 421, 423 (S.D.1993); *United Fire & Cas. Co. v. P & C Ins. Services, Inc.,* 488 N.W.2d 661, 666 (S.D.1992)("South Dakota law requires that damages be pled with reasonable certainty."); *S.W. Croes Family Trust v. Small Bus. Admin.,* 446 N.W.2d 55, 57 (S.D.1989).  Without damages most tort claims hold no nucleus.  *See Evergreen Farms v. First Nat. Bank & Trust Co.,* 250 Neb. 860, 553 N.W.2d 728, 735 (1996)("Damages, like any other element of plaintiff's cause of action, must be pled and proved, and the burden is on plaintiff to offer evidence sufficient to prove plaintiff's alleged damages."); *Sun Valley Iowa Lake Ass'n v. Anderson,* 551 N.W.2d 621, 641 (Iowa 1996); *Poulsen v. Russell,* 300 N.W.2d 289, 295 (Iowa 1981).

### [¶ 7.] 1. Assignment of Tort Action with Covenant Not to Execute

[¶ 8.] In South Dakota, "[a] thing in action arising out of the violation of a right of

---

**1.**  No one contends that anyone other than Christopher would have been liable for Kobbeman's injuries.

property or out of an obligation may be transferred by the owner." SDCL 43–42–2; *see also Sherman v. Harris*, 36 S.D. 50, 153 N.W. 925 (1915)(tort action assignable), *overruled on other grounds by Simons v. Kidd*, 73 S.D. 280, 41 N.W.2d 840 (1950). By assigning a thing in action, of course, assignors grant no greater rights than they possess. *Gilbert v. United Nat'l Bank*, 436 N.W.2d 23, 25 (S.D.1989); *Barnes v. Hampton*, 198 Neb. 151, 252 N.W.2d 138, 139 (1977); *Smith v. Brown*, 513 N.W.2d 732, 733–34 (Iowa 1994); 6B Appleman, *Insurance Law and Practice* § 4271, at 138 (1979). "[I]t is fundamental that a valid cause of action must exist in the assignor insured before an assignee can prevail against the insurer." *Berrington v. Williams*, 244 Cal.App.2d 130, 52 Cal.Rptr. 772, 776 (1966); Restatement (First) of Contracts § 167 (1932).

■ [¶ 9.] If the requested policy had been purchased, it presumably would have required the insurer to pay an amount, within policy limits, the insured would have been legally obligated to pay as damages. *Freeman v. Schmidt Real Estate & Ins.*, 755 F.2d 135, 137 (8th Cir.1985). Some courts conclude insureds protected by a covenant not to execute have no obligation to pay anything to injured parties; consequently, insurers have no duty to pay under their liability policies. *Oregon Mut. Ins. Co. v. Gibson*, 88 Or.App. 574, 746 P.2d 245 (1987)(tortfeasor unconditionally insulated from liability had no valid claim to assign); *Freeman*, 755 F.2d at 138 (citations omitted). If we applied this reasoning to the present case, even if the requested umbrella policy had been obtained, the covenant not to execute would have discharged any covered obligation. Some decisions go a step further finding these agreements unenforceable as inherently collusive. *Freeman*, 755 F.2d at 139. Other cases distinguish between a release and a covenant not to execute, holding that the type of covenant in question here "is merely a contract, and not a release, such that the underlying tort liability remains and a breach of contract action lies in favor of the insured if the injured party seeks to collect his judgment." *State Farm Mut. Auto. Ins. Co. v. Paynter*, 122 Ariz. 198, 203, 593 P.2d 948, 953 (Ct.App. 1979). The most pragmatic approach looks to the language of the covenant to find whether a tortfeasor remains legally obligated on a judgment. *Lancaster v. Royal Ins. Co. of America*, 302 Or. 62, 726 P.2d 371, 372 (1986).

[¶ 10.] Here, the assignment provided in part:

> The Kobbemans agree and covenant not to execute on any judgment obtained against the Daniels. The Kobbemans represent that their intent is to prosecute the assigned causes of action against Kahler Insurance Agency, Dave Oleson, or any other agency or agent. However, to the extent the Kobbemans are prohibited from proving up their damages in that action, the Kobbemans must have the ability to do so in an underlying action against the Daniels, if so required by a court.

With these provisions, even if a judgment was obtained but not levied against him, Christopher might still endure the adversity of litigation. Moreover, the assignment stipulates nothing about whether a docketed judgment would create a lien on his real property as required by SDCL 15–16–7. He might also suffer diminishment of his credit rating. Christopher's ostensible remedy if Kobbeman breaks his covenant and attempts to enforce a judgment against him would be to sue for breach of contract. *Paynter*, 593 P.2d at 953.

[¶ 11.] After considering the gamut of decisions in response to these arrangements, we find ourselves in agreement with those courts upholding assignments of a cause of action in exchange for a covenant not to execute in instances of failure to procure requested insurance. *Red Giant Oil Co. v. Lawlor*, 528 N.W.2d 524 (Iowa 1995). Concerns that such agreements are intrinsically collusive will not control because insurers have available to them a panoply of defenses, including coverage, fraud, and collusion. *Id.* at 533. "We fail to see why legally it should make any difference who sues the insurer—the insured or the insured's assignee." *Id.* Indeed, the assignee "would have to prove his damages and the insurer would have a right to assert any defense that it might have had if the insurance had been purchased as requested."

*Freeman,* 755 F.2d at 141 (Heaney, C.J., dissenting). Requiring assignees to prove their case "in full reduces the risk of collusion, and justifies giving effect to the assignment of the negligence claims." *Campione v. Wilson,* 422 Mass. 185, 661 N.E.2d 658, 663 (1996).

■ [¶ 12.] These types of settlements allow a remedy both to injured parties and to tortfeasors wrongfully deprived of insurance coverage. *Red Giant Oil Co.,* 528 N.W.2d at 534. Here, the covenant not to execute was "merely an agreement ... and not a release." *Id.* at 532; *see also Gray v. Grain Dealers Mut. Ins. Co.,* 871 F.2d 1128, 1133 (D.C.Cir.1989) ("Covenants not to execute are different than releases, as the legal liability remains in force against those who have covenants, whereas a release represents total freedom from liability."). Christopher's tort liability continued because he might still be legally obligated to pay despite the covenant not to execute. In *Clock v. Larson,* 564 N.W.2d 436, 438 (Iowa 1997), plaintiff, as the assignee of the insured, brought suit against an insurance agent and insurer, claiming they should have provided greater coverage. Distinguishing *Red Giant Oil Co.,* the Iowa Supreme Court held a controlling factor was the nature of the agreement:

> [A]n insured is still legally obligated to pay when there is a covenant not to execute on a judgment. But when there is a full release there is no further liability owed by the insurance company to its insured, and therefore the insured has no right to recover against the insurance company which can be assigned to the injured party.

*Id.* at 438. A settlement which includes a covenant not to execute (as opposed to a release) in exchange for an assignment of a cause of action against the tortfeasor's agent, who allegedly failed to obtain requested insurance, is neither intrinsically collusive nor ineffective for lack of damages. Next we ask, with such assignments must an injured party obtain a judgment against the tortfeasor to establish damages, and if so, when must the judgment be obtained?

[¶ 13.] **2. Prejudgment Assignment**

■ [¶ 14.] Whatever potential damages Christopher suffered from the failure to procure the requested umbrella policy remained unknown at the time of the assignment to Kobbeman.[2] In actuality, Kobbeman held an "anticipatory assignment of a chose in action." R.E. Keeton & A.I. Widiss, *Insurance Law* § 4.1 at 291 (1988). Is a judgment for an excess amount required to establish proof of loss from failure to obtain insurance? Somewhat analogously, in bad faith failure to settle cases, most jurisdictions uphold post-judgment assignments of a thing in action in exchange for a covenant not to execute on a judgment. *See Gray,* 871 F.2d at 1133 n. 7; *Samson v. Transamerica Ins. Co.,* 30 Cal.3d 220, 178 Cal.Rptr. 343, 356, 636 P.2d 32, 45 (1981)(absent collusion or unreasonableness in obtaining a judgment "an insured breaches no duty to the insurance company when he assigns his rights against the company to the injured plaintiffs in return for a covenant not to execute"); 46A CJS *Insurance* § 1410 (1993)("A valid judgment must be obtained against an insured before a cause of action arises in favor of the injured person against the insurance company, and until judgment against the insured is rendered, the injured person has only an inchoate or potential right against the company."). *Cf. Critz v. Farmers Ins. Group,* 230 Cal.App.2d 788, 41 Cal.Rptr. 401, 404 (1964)(assignment and release upheld even though no judgment obtained against insured because value determined by bad faith of insurer). *Contra Bendall v. White,* 511 F.Supp. 793, 795 (N.D.Ala.1981). *See also Wolff v. Royal Ins. Co. of America,* 472 N.W.2d 233, 235 (S.D.1991)(applying Nebraska law—invalid consent judgment given

---

**2.** "Whether the expectation or the reliance measure is used, the promisor's liability will equal the amount of the loss, at least if the insured's lost opportunity to obtain other insurance is counted." E. Allan Farnsworth, Contracts § 2.19, at 101 (2d ed 1990). "The expectation measure would be the amount required to put the promisee in the position in which the promis-ee would have been had the insurance been procured, that is, the amount of the loss. The reliance measure would be the amount required to put the promisee in the position in which [the] promisee would have been had the promise not been made, that is, the amount of the loss—if it is assumed that the promisee relied by forbearing to procure insurance elsewhere." Id. at n. 45.

in exchange for covenant not to execute—obtained in bad faith and through collusion).

[¶ 15.] In some forums, prejudgment assignments of an insured's claims for bad faith have been disapproved.[3] *See, e.g., State Farm Fire & Cas. Co. v. Gandy,* 925 S.W.2d 696, 714 (Tex.1996); *Smith v. State Farm Mut. Auto. Ins. Co.,* 5 Cal.App.4th 1104, 7 Cal.Rptr.2d 131, 136 (1992)("[w]e recognize policy considerations for disallowing assignments of a bad faith action prior to judgment"—stipulated judgment with covenant not to execute not sufficient); *Wright v. Fireman's Fund Ins. Cos.,* 11 Cal.App.4th 998, 14 Cal.Rptr.2d 588, 598 (1992)("A judgment on the merits, however, is not always required and insurers have been bound by default and stipulated judgments under certain circumstances."); *Doser v. Middlesex Mut. Ins. Co.,* 101 Cal.App.3d 883, 162 Cal.Rptr. 115, 120 (1980)(insured's assignment conveys nothing unless judgment entered against insured). "[T]he third party's suit may not be brought until the action between the injured party and the insured is concluded ... [and] liability of the insured is first determined...." *Moradi–Shalal v. Fireman's Fund Ins. Cos.,* 46 Cal.3d 287, 250 Cal.Rptr. 116, 127, 758 P.2d 58, 69 (1988)(settlement is an insufficient conclusion of the underlying action—there must be a conclusive judicial determination of the insured's liability before the third party can proceed in an action against the insurer); *Doser,* 162 Cal.Rptr. at 120.

The rationale of the cases requiring a judgment as a condition precedent to an insured's cause of action against an insurer becomes manifest when we deal with the issue of damages in this case. We are concerned here not only with the fact of damages being clearly established, but the certainty of the amount thereof as well. *Doser,* 162 Cal.Rptr. at 120.

[¶ 16.] Other decisions look not to the timing, but to the language of the covenant not to execute. "Whether the assignment was made of a judgment in existence or a judgment to come into existence is not determinative of whether or not the insured's assignee may maintain an action against the insurance company." *Lancaster,* 726 P.2d at 374. *See also Antal's Restaurant, Inc. v. Lumbermen's Mut. Cas. Co.,* 680 A.2d 1386, 1389 (D.C.1996)(the debt "for which an insurer becomes liable is fixed at the time of loss even though the amount of the compensation is still to be ascertained."). In bad faith refusal to settle cases, a rule mandating postjudgment assignment is more imperative because, in most instances, no cause of action solidifies until judgment is rendered against an insured. On the other hand, in failure to procure insurance cases, claims may reasonably arise long before a judgment. We conclude, with assignments of causes of action for failure to procure insurance, a judgment establishing a loss is critical, but its timing is not.[4] A more difficult question, one not ripe

**3.** Kobbeman cites *Helmbolt v. LeMars Mutual Ins. Co., Inc.,* 404 N.W.2d 55, 58 (S.D. 1987)(there must exist "potential personal responsibility for an excess judgment"). Our holding in *Helmbolt* that an insured need not reduce to judgment a claim against a tortfeasor before entitlement to underinsured motorist benefits from the insured's own insurance company, is based in part upon the statutory mandate of SDCL 58–11–9.5. With its unusual facts and no cognate statutory provisions to direct us here, *Helmbolt* must be confined to its unique circumstances. "Nothing in the above statutes (SDCL 58–11–9.5 and 9.6) requires an insured to reduce a claim against a tortfeasor to judgment prior to payment of underinsurance benefits." *Helmbolt,* 404 N.W.2d at 59. "Had the legislature intended to require a judgment prior to payment of underinsured coverage, it would have and could have said so." *Id.*

**4.** The dissent cites *Steinmetz ex rel. Palmer v. Hall–Conway–Jackson, Inc.,* 49 Wash.App. 223,

741 P.2d 1054, 1056 (1987) to support its argument that no judgment need be obtained in the underlying action and that this case was brought within the appropriate statute of limitations. *Steinmetz* never discussed any statute of limitations. Although it uses a different rationale, it upheld, as do we, an assignment with a covenant not to execute in the case of an insurance agent who failed to procure requested insurance. Furthermore, in *Steinmetz* whether a judgment, as opposed to a mere stipulation, was required to establish the insured's loss was not challenged. Perhaps it is simplistic to ask in response to the dissent's assertion that no judgment need be obtained against the assignor, does not the granting of a covenant not to execute on any judgment presuppose a judgment will be obtained? Nonetheless, in most states, including Washington, at least a consent judgment is obtained in the underlying case. See cases collected in *McLellan v. Atchison Ins. Agency, Inc.,* 81 Hawai'i 62, 912 P.2d 559, 564–65 (Ct.App. 1996)(applying "judg-

for consideration here, is whether a judgment obtained without full adversary proceedings will suffice.[5] *See Gandy*, 925 S.W.2d at 719. This is an old quandary. Long ago, Holmes' concern about the alienation of choses in action involved "the difficulty of transferring a mere right ... when the situation of fact from which it sprung could not also be transferred." O. Holmes, *The Common Law*, 409 (Dover 1991)(1881). In any event, so long as one ultimately obtains a judgment in the underlying action to establish the loss before proceeding to trial on the assigned claim, it is not crucial whether the judgment precedes or follows the assignment. Now we come to the final problem: With the statute of limitations having expired, can Kobbeman ever obtain a valid judgment against Christopher?

#### [¶ 17.] *3. Waiver of Statute of Limitations*

██ [¶ 18.] After the statute of limitations had expired on his underlying tort claim, Kobbeman nonetheless brought a separate suit against Christopher, undoubtedly to seek a judgment above the $100,000 policy limits State Farm had already paid. That matter was still pending at the time this appeal reached us. Because the limitations period expired on Kobbeman's case against Christopher, Oleson and Kahler contend Christopher is no longer liable to Kobbeman for any damages in the future and thus the assignment is ineffective. Though he does not dispute that he commenced the action after the limitations period expired, Kobbeman insists his separate case against Christopher should be allowed to take its course because the assignment waived the statute of limitations defense.[6] We are unaware whether the circuit court presiding in the case against Christopher directly ruled on this question. In the case before us, however; the expiration of the limitations period was argued at the summary judgment hearing, but it is unclear whether the court specifically considered this issue when it granted summary judgment. Regardless, the validity of the assignment with its purported waiver of the statute of limitations is squarely before us.

[¶ 19.] Our examination of the assignment reveals it to be indistinct on whether the limitations period was truly waived. Kobbeman refers to the following language: "[T]o the extent that the Kobbemans are prohibited from proving up their damages in that action [Kobbeman v. Kahler], the Kobbemans must have the ability to do so in an underlying action against the Daniels if so required by a court." Even if we were to construe this provision as effectively tolling the limitations period applicable to the case against Christopher, the question remains whether such a waiver is valid as it affects Kahler and Oleson.

██ [¶ 20.] In South Dakota, agreements limiting the time to enforce one's rights are void. *See* SDCL 53–9–6. On the other hand, here, as in most jurisdictions, parties to a lawsuit or a potential lawsuit may agree to

---

ment rule" in case of failure to procure adequate insurance with covenant not to execute—making no distinction from bad faith refusal to settle cases for this purpose—finding the tort is complete when judgment becomes final). *McLellan* also held that the insurance agency was not bound by the amount set forth in the "stipulated judgment."

5. Some courts set out certain factors to determine whether a consent judgment with a covenant not to execute is reasonable. See *Chaussee v. Maryland Cas. Co.*, 60 Wash.App. 504, 803 P.2d 1339, 1342–43 (1991); *Griggs v. Bertram*, 88 N.J. 347, 443 A.2d 163, 174 (1982). In *Red Giant Oil Co.*, 528 N.W.2d at 534, where the assignor and assignee agreed to a stipulated judgment, the Iowa Supreme Court wrote:

But here the judgment is not an adjudication on the merits. It is only the settlement Red Giant and Coyle reached. There was no real trial. So in these circumstances, while the judgment is binding and valid as to Coyle and Red Giant, it is not conclusive as to LeMars, the insurer. See *Miller v. Shugart*, 316 N.W.2d 729, 735 (Minn.1982) (reaching the same conclusion as to settlement reached under circumstances similar to those here).

6. Kobbeman also insisted in a supplemental brief that Kahler and Oleson admitted that Christopher waived the limitations period. Our examination of the record where this admission was supposedly made fails to reveal any judicial admission. At most, defendants' attorney agreed the assignment could arguably constitute a waiver of the statute of limitations. See *Tunender v. Minnaert*, 1997 SD 62, ¶ 24, 563 N.W.2d 849, 854.

extend a statutory period of limitations. *Order of United Commercial Travelers of America v. Wolfe*, 331 U.S. 586, 608, 67 S.Ct. 1355, 1365, 91 L.Ed. 1687 (1947); *Kroeger v. Farmers' Mut. Ins. Co.*, 52 S.D. 433, 434, 218 N.W. 17 (S.D.1928)(by contract, express or implied, the time for bringing an action may be extended beyond the time fixed by law); *Travelers Indem. Co. v. Rexnord, Inc.*, 37 Pa.Cmwlth. 20, 389 A.2d 246, 249 (1978). *See also* Annotation, *Validity of Contractual Waiver of Statute of Limitations*, 1 A.L.R.2d 1445 (1948). Even a waiver agreement reached a year after expiration of a limitations period has been upheld as enforceable to preserve previously time barred claims. *Union Bank of Switzerland v. HS Equities, Inc.*, 457 F.Supp. 515, 521 (S.D.N.Y.1978). Agreements extending a limitations period to an indefinite future date have, however, been held void and unenforceable. *T & N PLC v. Fred S. James & Co. of New York, Inc.*, 29 F.3d 57, 61 (2nd Cir.1994)(interpreting standstill agreement under New York law); *Hirtler v. Hirtler*, 566 P.2d 1231, 1232 (Utah 1977)(promissory note containing permanent waiver of statute of limitations, void as contrary to public policy).

[¶ 21.] Ordinarily, the statute of limitations defense is personal and cannot be asserted for someone else. *Kroeger*, 52 S.D. at 434, 218 N.W. 17; *State ex rel. Marsh v. Nebraska St. Bd. of Agric.*, 217 Neb. 622, 350 N.W.2d 535, 540 (1984). Yet a waiver of the statute is usually applicable only to persons agreeing to it. *County of Santa Clara v. Vargas*, 71 Cal.App.3d 510, 139 Cal.Rptr. 537, 543 (1977). Most troublesome are waiver agreements designed to ensnare nonparticipants. *Insurance Co. of North America v. Carnahan*, 446 Pa. 48, 284 A.2d 728, 729 (1971)(parties to a lawsuit may modify statutory period of limitations but such contract is only good as between themselves and they may not contract in derogation of rights of third party who was not privy to the agreement). Indeed, "[c]ertain waivers have been held void as against public policy because they were prospective in nature and not in settlement of a contemporaneous dispute." *950 Third Ave. Co. v. Eastland Indus. Inc.*, 119 Misc.2d 19, 463 N.Y.S.2d 367, 372 (1983).

[¶ 22.] We are sincerely concerned with the potential for abuse if we uphold the supposed waiver of the statute of limitations in these circumstances. Christopher's waiver having the merest personal consequence for himself, truly impacts Oleson and Kahler. *See Carnahan*, 284 A.2d at 729 (waiver in derogation of third party's rights). To sanction a tortfeasor's waiver of the statute of limitations, which in effect extends only another's exposure to liability, invites future mischief and collusion. Once the statute of limitations expired, the basis for both the assignment and covenant dissolved: Christopher could no longer suffer an excess judgment and thus he (and his assignee) no longer had grounds to sue for failure to obtain an umbrella policy. Validating his waiver would make Christopher's need to sue the agents a mere pretext. While this is an issue of first impression in South Dakota, and certainly it was not improper for Kobbeman and his attorneys to attempt this undertaking, we know of no legal authority anywhere condoning such an arrangement. The waiver portion of the assignment (if it can be deemed a waiver) is void as against public policy because it prolonged an otherwise closed controversy, solely to extend exposure to others by artificially perpetuating a need for insurance coverage. "Although the Statute of Limitations is generally viewed as a personal defense 'to afford protection to defendants against defending stale claims,' it also expresses a societal interest or public policy of giving repose to human affairs . . . . (citations omitted). Because of the combined private and public interests involved, individual parties are not entirely free to waive or modify the statutory defense." *Kassner & Co., Inc. v. City of New York*, 46 N.Y.2d 544, 415 N.Y.S.2d 785, 789, 389 N.E.2d 99, 103 (1979). As Christopher is no longer exposed to liability because the statute of limitations expired, we affirm the grant of summary judgment.[7]

---

7. The dissent misapprehends the legal posture of this case. Christopher's exposure to potential damages was the subject of his assignment. Assignees' rights are coterminous with their assignors'. So long as he remained exposed, the assignment of his cause of action against the insurance agents remained valid. Contrary to what the dissent seems to suggest, we uphold

### Summary

[¶ 23.] The assignment with a covenant not to execute was a tenable method for transferring a cause of action against the insurance agents for failure to obtain requested coverage. However, with the expiration of the statute of limitations, the waiver of the statute being void, Christopher no longer faced the possibility of an excess judgment. The assignment became ineffective when the cause of action it transferred ceased to exist.

[¶ 24.] Affirmed.

[¶ 25.] MILLER, C.J., and AMUNDSON and GILBERTSON, JJ., concur.

[¶ 26.] SABERS, J., dissents.

SABERS, Justice (dissenting).

[¶ 27.] I dissent.

**This is an assignment of an insurance malpractice case. As such, it is determined in the same manner as a legal malpractice case, which is on a "case within a case" basis. It *was* brought within the appropriate statute of limitations, it was not necessary to reduce it to judgment, and it is only necessary to prove the "case within a case." Obviously, it was not necessary for Kobbeman to sue Defendants in Daniel's name or obtain any judgment because Daniel's cause of action had been assigned to him.**

[¶ 28.] This is an assignment of an insurance malpractice case; as such, it is determined in the same manner as a legal mal-

practice case, which is on a "case within a case" basis.

The manner in which the plaintiff can establish what should have transpired in the underlying action is to recreate, i.e. litigate, an action which was never tried. This procedure of recreating the underlying action is known as a suit within a suit, a trial within a trial, an action within an action, a case within a case, to name but a few of the designations. The objective is to establish what the result would have been had the case been filed. . . .

Thus, the plaintiff in a legal malpractice case has not only to prove the four elements basic to negligence cases, but may be asked to prove three additional factors: 1) that the underlying claim was valid, 2) that it would have resulted in a favorable judgment had it not been for the attorney's error, and 3) the amount of the judgment and that the judgment was collectible.

*Haberer v. Rice,* 511 N.W.2d 279, 285 (S.D. 1994) (citations omitted). The assignment to Kobbeman carried with it the burden to prove 1) his damages sustained because of Daniel's negligence, and 2) Defendants' liability to Daniel for failing to procure insurance and Daniel's damages therefrom. To prove the latter, he must show that Daniel requested the policy and that the loss would have been within the risk insured against. *Kagele v. Aetna Life & Cas. Co.,* 40 Wash.App. 194, 698 P.2d 90, 94 (1985) ("[A]s a condition precedent to recovery against the insurer [in assigned action], the injured party would

---

that assignment with its covenant not to execute. Once the statute of limitations applicable to Kobbeman's personal injury action against Christopher expired, however, Christopher was forever relieved of any potential liability. He had no case against the agents as he could no longer suffer any damages. The cause of action he assigned therefore became worthless. Nonetheless, Kobbeman wishes us to construe the assignment as a waiver extending Christopher's exposure beyond the expiration of the statute of limitations, thus keeping the assignment viable. We say such an arrangement violates public policy.

To illustrate the problem, let us take the dissent's malpractice analogy:

> Accountant misses a filing deadline on a tax return thus exposing Client to a late payment

penalty. Client has a cause of action against Accountant for damages equal to whatever penalties might be assessed against Client in the future. Client assigns his cause of action to Assignee. As part of the assignment, Client agrees to indefinitely waive the statutory penalty assessment deadline. Later, the deadline to assess penalties expires, so Client would have been off the hook. However, because Client waived the deadline, Assignee may continue the action against Accountant even after any basis for suit would have ceased to exist.

What is wrong with this should be obvious: Exposure to additional penalties becomes purely artificial. Client could suffer no loss except by his own infliction. Such stratagem allows for the prolongation of liability solely for the sake of producing damages against a third party.

have to prove the claim was within the coverage of the policy.").

[¶ 29.] Since this action is tried on a "case within a case" basis, it *was* brought within the appropriate statute of limitations and it is not necessary to reduce Kobbeman's claim to judgment within that timeframe.[8] It *is* necessary to prove the case within a case, but there is no need for a judgment at this time. The fact that no out of pocket payment was made and no personal liability incurred because of the covenant not to execute did not mean, as a matter of law, that Daniel was not damaged. *See Steinmetz* ex rel. *Palmer v. Hall–Conway–Jackson, Inc.,* 49 Wash.App. 223, 741 P.2d 1054, 1056 (1987):

> The assignee's rights are coextensive with those of the assignor *at the time of the assignment.* ... At the time of settlement, [insured] had a claim against [insurer] for damages owed to [injured party] resulting from [insurer's] negligence in failing to obtain the proper insurance. In consideration of [injured party's] agreement not to sue or execute, [insured] assigned to [injured party] her right to sue [insurer]. Palmer, as the assignee, took those rights held by Steinmetz *at the time of assignment.* ... The fact that Steinmetz did not pay out of her own pocket and was not subjected to personal liability because of the covenant is immaterial....

*Therefore, because the trial court looked at the effect the covenant had on Steinmetz's personal liability rather than on the right to sue possessed by Steinmetz when she assigned the right to Palmer,* we conclude that the trial court erred when it concluded as a matter of law that Steinmetz was not damaged and thus awarded summary judgment to Conway.

(Emphasis added).

[¶ 30.] Additionally, the majority opinion ignores the "assignment" statutes. In the absence of a statute, an unliquidated claim for damages arising out of tort is not assignable. 6A CJS *Assignments* § 37, at 642–43 (1975).[9] South Dakota's policy is to permit parties to assign these causes of action. *See* SDCL 43–42–1, which defines a "thing in action" as "a right to recover money or other personal property by a judicial proceeding." *See also* SDCL 43–42–2:

> A thing in action arising out of the violation of a right of property or out of an obligation may be transferred by the owner. Upon the death of the owner it passes to his personal representatives except where in the cases provided by law it passes to his devisees or successor in office.

In *Sherman v. Harris,* 36 S.D. 50, 153 N.W. 925 (1915), *overruled on other grounds by*

---

8. Footnote 7 of the majority opinion misses the point because it incorrectly assumes that it is somehow necessary to extend Daniel's exposure beyond the expiration of the statute of limitations, which it claims violates public policy. It is not necessary because the suit on the assigned cause of action for insurance malpractice was commenced well within the statute of limitations. Since Oleson and Kahler were sued on the assigned cause of action well within the statute of limitations, it is only necessary to prove the proper damages resulting from the failure to procure insurance.

Therefore, the majority opinion's accountant example improperly manufactures "an indefinite waiver" that does not exist in this case. The accountant example implies that Assignee brings the assigned cause of action *after* the expiration of the statute of limitations, which would clearly preclude prosecution of the action. *See Gilbert v. United Nat'l Bank,* 436 N.W.2d 23, 25–26 (S.D. 1989) (dismissing assigned claims on basis of untimeliness, not for lack of prior judgment). Here, Kobbeman timely filed the assigned lawsuit.

Under the majority's example, any assignee suing within the appropriate statute of limitations stands to lose the "basis for suit" because it "ceases to exist" on the date the statute of limitations *would* have expired. If this were the law, all assigned suits, brought within the proper statute of limitations, would be subject to defendants' foot-dragging and ultimate dismissal. A better example is as follows:

> Debtor (D) owes Creditor (C) $1,000. C assigns the claim to Assignee (A). A sues D on the assigned cause of action well within the statute of limitations. It is not necessary for A to also sue D in C's name on the underlying debt. Nor is it necessary for C to sue D before or after the assignment. It is simply a matter of proof of the assigned claim against D.

9. As a general rule, any right of action arising out of a contract may be assigned, including a right of action for damages for a breach of contract, even though the contract itself is not assignable. *Assignments* § 36, at 641.

*Simons v. Kidd,* 73 S.D. 280, 41 N.W.2d 840 (1950), an action for deceit was brought by Sherman for damages suffered 1) by Sherman, and 2) by Wade, who assigned his right of action to Sherman. The defendant's appeal was based on whether the cause of action could be assigned at all, which the court answered affirmatively. Apparently not at issue was whether the assignor's damages must be reduced to judgment before the action could be assigned; however, it is clear that damages to both assignor and assignee were ascertained by the trial court after the assignment:

> The court made findings of fact and conclusions of law, from which it appears that the plaintiff suffered damage to the amount of $1,000 under the first cause of action, and that the said W.V. Wade suffered damage to the amount of $200 under the claim set forth in the third cause of action.

[¶ 31.] In *Helmbolt v. LeMars Mutual Insurance Co., Inc.,* 404 N.W.2d 55, 59 (S.D. 1987), this court ruled that an insured was not required to reduce a claim against a tortfeasor to judgment prior to payment of underinsurance benefits by the insurer. The majority opinion distinguishes *Helmbolt* by stating it is based upon the statutory mandate of SDCL 58–11–9.5, which does not require an insured to reduce a claim to judgment prior to payment of underinsurance benefits. Likewise, SDCL 43–42–1 & –2 provide that a right to recover money in a judicial proceeding may be transferred by the owner, yet neither dictate that the right must be reduced to judgment. If they did, then they would no longer be providing for assignment of a *right to recover money,* but rather an assignment of a *judgment.* *Helmbolt* states, "Nothing in the statutes requires an insured to reduce a claim against a tortfeasor to judgment prior to payment of underinsurance benefits." 404 N.W.2d at 59. Similarly, nothing in the "thing in action" statutes mentions or requires a judgment, so *Helmbolt* is *not* contrary authority.

[¶ 32.] Not only is there no law, there is absolutely no reason to require litigation and a judgment between Kobbeman and Daniel when damages would almost certainly be disputed and relitigated between Kobbeman and Defendants. Why require an obviously unnecessary and duplicative act? Even cases cited by the majority opinion recognize that the assignee must prove his damages in the suit against the insurer. *See, e.g., Campione v. Wilson,* 422 Mass. 185, 661 N.E.2d 658, 662–63 (1996):

> To recover against the defendants, therefore, in addition to proving the essential elements of their negligence claim against them, the plaintiffs will have to establish O'Donnell's fault for accident (at least because the question of comparative fault may be in dispute and may affect the measure of damages), and they must prove the extent to which their damages exceeded the coverage afforded by American. We do not consider the settlement agreement as probative on any of these points, particularly damages. Placing with the plaintiffs the responsibility of proving their assigned claims in full reduces the risk of collusion, and justifies giving effect to the assignment of the negligence claims. We conclude that the plaintiffs' negligence claims should not have been dismissed.

(Citations & footnote omitted); *cf. Miller v. Byrne,* 916 P.2d 566, 582 (Colo.Ct.App.1995) (agreeing with trial court that 1) settlement may not reflect an arm's length determination of the worth of plaintiff's claim and therefore 2) settlement amount should not be the conclusive measure of damages in bad faith breach of insurance contract action and 3) assignee would be required to prove her damages on retrial); *Red Giant Oil v. Lawlor,* 528 N.W.2d 524, 535 (Iowa 1995) (putting burden on injured party to prove 1) the underlying claim was covered by the policy, and 2) the settlement which resulted in the judgment was reasonable and prudent); *accord Freeman v. Schmidt Real Estate & Ins.,* 755 F.2d 135, 141 (Heaney, J., dissenting) ("Of course, in any action, the insured would have to prove his damages and the insurer would have a right to assert any defense that it might have had if the insurance had been purchased as requested. This simple safeguard would prevent any collusive settlement.").

[¶ 33.] As noted by the majority opinion, "[T]he 'debt' for which an insurer becomes

liable is fixed at the time of loss even though the amount of compensation is still to be ascertained." *Antal's Restaurant, Inc. v. Lumbermen's Mut. Cas. Co.*, 680 A.2d 1386, 1389 (D.C.1996). Since the case against Oleson and Kahler was assigned to Kobbeman by Daniel, there was obviously no need for Kobbeman to bring a suit in Daniel's name against Defendants, and, in fact, to do so would have clearly been improper.[10] Nor was it necessary for Kobbeman to reduce his damages to judgment prior to bringing this action. The covenant not to execute does not eliminate the fact of damage and does not absolve Oleson and Kahler of liability. *Chaussee v. Maryland Cas. Co.*, 60 Wash. App. 504, 803 P.2d 1339, 1343 (1991). Consequently, the trial court erred in dismissing this case and the majority opinion repeats the error. Therefore, we should reverse and remand for trial.

---

**10.** The majority opinion's citation to 46A CJS *Insurance* § 1410 (1993) for the proposition that a "valid judgment must be obtained against insured before a cause of action arises in favor of the injured person against the insurance company ..." is misleading; section 1410 discusses "direct actions" against insurance companies, which are prohibited by statute in most jurisdictions. *See, e.g.,* SDCL 58–23–1; *Klatt v. Continental Ins. Co.*, 409 N.W.2d 366, 373 (S.D.1987). This case concerns an assigned cause of action, not a direct action. Furthermore, SDCL 58–23–1 demonstrates that the Legislature knows how to provide that a judgment is a prerequisite to a lawsuit, and would have written SDCL 43–42–1 & –2 accordingly if that is what it had intended.